T.C. Memo. 2014-194

UNITED STATES TAX COURT

HOWARD E. MAY AND ESTATE OF JUDITH A. MAY, DECEASED,
MARCIA M. MAY, PERSONAL REPRESENTATIVE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14545-12L.                    Filed September 23, 2014.

<u>Donald W. MacPherson</u> and <u>Bradley S. MacPherson</u>, for petitioners.

<u>Brandon A Keim</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  This collection due process (CDP) case is before the

Court on a motion for summary judgment filed by the Internal Revenue Service

[*2] (IRS or respondent) pursuant to Rule 121.[1] We are asked to decide two questions: (1) whether the IRS settlement officer abused her discretion in sustaining the proposed collection action; and (2) whether petitioners should be sanctioned for advancing frivolous positions in this Court. We answer the first question "no" and the second question "yes." On our own motion, we consider a third question: whether petitioners' attorney Donald W. MacPherson should be sanctioned for unreasonably and vexatiously multiplying these proceedings. We will order him to show cause why he should not be sanctioned.

## Background

Neither Howard May nor Judith May, then husband and wife, filed a timely Federal income tax return for 2004. The IRS prepared a substitute for return (SFR) for petitioner-husband using third-party information and issued a notice of deficiency to him in 2010. The IRS did not prepare an SFR for petitioner-wife and did not issue a notice of deficiency to her.[2] Petitioner-husband did not seek

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[2]Judith May died in 2013 and was replaced as a party by her estate's personal representative. For convenience, we will continue to refer to Howard May's deceased wife as "petitioner-wife."

**[\*3]** redetermination of the deficiency in this Court, and the IRS thereafter assessed the deficiency.

In early 2011 petitioners jointly submitted a Form 1040, U.S. Individual Income Tax Return, for 2004. The IRS thereupon combined its computer-based tax modules for petitioner-husband and petitioner-wife. As a result of that combination, petitioners' consolidated Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2004 incorrectly indicated that the IRS had issued notices of deficiency both to petitioner-husband and to petitioner-wife. That was because the "notice of deficiency" transaction code, which was originally posted correctly to petitioner-husband's tax module, migrated to petitioners' consolidated tax module after the IRS received their untimely 2004 return. This computer entry was later corrected.

After receiving the late-filed 2004 return, the IRS abated the tax previously assessed against petitioner-husband in an amount necessary to conform the assessment to the amount petitioners had self-reported. Accordingly, petitioners' Form 4340 for 2004, as of yearend 2012, reflected the following: $16,465 of tax assessed on August 30, 2010; $4,407 of tax abated on May 2, 2011; and $12,058

**[*4]** of net assessed tax. The net assessed tax reflects the tax that petitioners self-reported on their late-filed return which they have not paid in full.[3]

The IRS initiated proceedings, by lien and levy, to collect petitioners' unpaid 2004 tax liability.[4] On October 10, 2011, the IRS sent petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing. Petitioners timely requested a CDP hearing. In their request petitioners stated that they intended to seek relief through collection alternatives, hardship waivers, penalty abatement, and a challenge to their underlying tax liability for 2004. Petitioners also demanded that the IRS "produce 23c, RACS 006 and any other assessment documents"; a signed assessment document "with legible signatures and [the] typed name of [the] officer who signed"; and the delegation order authorizing the assessment officer to sign the assessment.

---

[3]After receiving petitioners' late-filed 2004 return, the IRS also abated certain assessments of additions to tax and interest. Those amounts are not at issue.

[4]On November 15, 2011, the IRS sent petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (lien notice) for 2004 (as well as for four other years). Petitioners timely requested a CDP hearing for the lien notice. Neither the notice of determination nor the supplemental notice of determination at issue here, however, makes a determination with respect to the lien notice. The lien notice is therefore not currently before us because the IRS did not make a determination with respect to it during the CDP hearing. See secs. 6320(c), 6330(d)(1).

**[*5]** The CDP hearing was assigned to Settlement Officer Silva (SO Silva). SO Silva sent a letter to petitioners and Attorney MacPherson, scheduling a telephone CDP hearing for March 6, 2012. The letter explained that, if petitioners wished the IRS to consider collection alternatives, they should provide before the conference a completed Form 433-A, Collection Information Statement for Wage-Earners and Self-Employed Individuals, along with supporting financial information.

On February 7, 2012, Attorney MacPherson wrote SO Silva to request a two-week extension of time to provide the requested documents. SO Silva granted that request, but no documents were submitted by the extended deadline. On March 6, 2012, the day of the scheduled hearing, SO Silva received a fax from Attorney MacPherson stating that he was ill and requesting that the hearing be continued. SO Silva granted that request and rescheduled the hearing for March 14, 2012. SO Silva called Attorney MacPherson at the rescheduled hearing time, but he was not available.

Later that day, SO Silva sent petitioners a letter, with a copy to Attorney MacPherson, noting that she had not received any documents prerequisite to considering collection alternatives and that Attorney MacPherson had been unavailable for the hearing. Attorney MacPherson called SO Silva the next day to say

[*6] that he had been ill and was confused about the rescheduled hearing. SO Silva granted him an extension of time until March 28, 2012, to submit the required financial information. Attorney MacPherson submitted no relevant documents by that date. Instead he submitted, on March 29, 2012, another letter demanding that the IRS produce delegation orders, certificates of assessment with original signatures, and so on.

At this point SO Silva reviewed the computer transcripts of petitioners' 2004 account and concluded that the requirements of applicable law and administrative procedure had been met. She confirmed that the net assessed tax for 2004, which corresponded to the tax liability petitioners had self-reported on their late-filed 2004 return, had been properly assessed. She determined that petitioners were not entitled to consideration of a collection alternative because they had failed to provide the required financial information despite several extensions of time in which to do so. She accordingly closed the case, and, on May 8, 2012, the IRS sent petitioners a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 sustaining the levy.

Petitioners timely petitioned this Court for review. The only ground of error alleged in the petition, prepared by Attorney MacPherson, concerns the supposed impropriety of the 2004 assessment. The petition acknowledges that petitioners

**[\*7]** "agreed to" the 2004 assessment amount by self-reporting a liability in that amount on their late-filed 2004 return. The petition nevertheless contends that the assessment "was not legally made" because the IRS had not supplied "a proper assessment document" bearing "the signature of the assessment officer" together with a copy of the delegation order authorizing the officer to make the assessment.

On August 1, 2012, after filing his answer, counsel for respondent notified Attorney MacPherson by letter that the assessment-focused arguments he advanced in the petition had been identified, in Notice 2010-33, 2010-17 I.R.B. 609, as frivolous tax positions. This letter advised Attorney MacPherson that, if he persisted in pressing such arguments, respondent would ask the Court to impose a penalty for taking a "frivolous or groundless" position in a Tax Court proceeding or instituting such proceeding "primarily for delay." See sec. 6673(a)(1)(A) and (B).

In early 2013 counsel for respondent discovered that petitioner-wife should have been afforded an opportunity to dispute her 2004 tax liability at the CDP hearing because she (unlike petitioner-husband) had not received a notice of deficiency. Respondent accordingly moved to remand the case to the IRS Appeals Office for a supplemental CDP hearing. Petitioners did not oppose that request, and we granted it.

**[\*8]**  At the supplemental hearing Attorney MacPherson advanced on behalf of petitioner-wife no arguments concerning her actual tax liability for 2004.  Rather, he advanced the same series of assessment-focused contentions that he had previously been warned were frivolous.  SO Silva again reviewed petitioners' account transcripts for 2004 and again confirmed that the net assessed tax for 2004 had been properly assessed.  SO Silva further determined that petitioners had not submitted, either at the original or the supplemental CDP hearing, any documentation that would entitle them to consideration of a collection alternative.  The IRS thereupon issued a supplemental notice of determination sustaining the proposed levy.  The case is now before the Court on respondent's motion for summary judgment.  Petitioners resided in Nevada when they filed the petition.

## Discussion

### I.    Summary Judgment Standard

Summary judgment is intended to expedite litigation and avoid unnecessary and costly trials.  <u>FPL Grp., Inc. & Subs. v. Commissioner</u>, 116 T.C. 73, 74 (2001).  We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b).  In deciding whether to grant summary judgment, we view all factual materials and the inferences drawn therefrom in the light most favorable to the nonmoving party.

[*9] <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985). However, the nonmoving party may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine dispute. Rule 121(d); see <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).

The arguments petitioners have advanced by way of opposition to SO Silva's determinations implicate no disputed issues of fact but raise questions of law. See <u>Best v. Commissioner</u>, T.C. Memo. 2014-72, at *12 (holding that the arguments advanced by Attorney MacPherson in that case, substantially identical to those advanced here, raise questions of law). These arguments focus on the assessment-related documents that the IRS provided to petitioners, and the parties agree on what those documents were. We conclude that the issues presented are appropriate for summary adjudication.

## II.     Standard of Review

Where the validity of the underlying tax liability is at issue, the Court reviews the Commissioner's determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000). Where there is no dispute concerning the underlying tax liability, the Court reviews the determination for abuse of discretion. <u>Id.</u> at 182. In reviewing for abuse of discretion, we must uphold the Commissioner's

**[\*10]** determination unless it is arbitrary, capricious, or without sound basis in fact or law.  See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).  When faced with questions of law, as we are here, the standard we apply makes no difference.  <u>See</u> <u>Best</u>, T.C. Memo. 2014-72, at \*12.  Whether we review for abuse of discretion or consider the matter de novo, we must reject erroneous views of the law.  <u>Kendricks v. Commissioner</u>, 124 T.C. 69, 75 (2005).

III.   <u>Analysis</u>

Following a CDP hearing, an SO must determine whether and how to proceed with collection.  This determination must take into account, among other things, the collection alternatives (if any) the taxpayer has proposed and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.  <u>See</u> sec. 6330(c)(2) and (3).

In response to the motion for summary judgment, Attorney MacPherson filed a response (including 17 exhibits) that totals 159 pages.  From this welter of paper we discern two theories.  The first is that SO Silva abused her discretion because she relied on computerized account transcripts, rather than physical source documents, to verify, as required by section 6330(c)(1), that respondent had properly assessed petitioners' unpaid tax liability.  The second theory is that SO Silva

**[\*11]** abused her discretion by neglecting to furnish petitioners with copies of signed records of assessment accompanied by a delegation order attesting to the assessing official's capacity to assess. We address each theory in turn.[5]

### A. Reliance on Account Transcripts

The Commissioner may collect Federal taxes by administrative means after he assesses those taxes. Bull v. United States, 295 U.S. 247, 259 (1935). An assessment is a recording of a taxpayer's liability in the office of the Secretary in accordance with prescribed rules or regulations. Sec. 6203. An assessment officer assesses a tax by signing a summary record of assessment, which, through supporting records, must identify the taxpayer, the character of the liability, the taxable period (if applicable), and the assessed amount. Sec. 301.6203-1, Proced. & Admin. Regs. The summary record of assessment may be made either on IRS Form 23C or (more recently) on its computer-generated equivalent, the Revenue Accounting Control System Report 006. See, e.g., March v. IRS, 335 F.3d 1186,

---

[5]The arguments Attorney MacPherson advances range from accusing the IRS of defrauding the public to asserting that sec. 301.6203-1, Proced. & Admin. Regs., should be invalidated because it mentions district and regional directors, positions that no longer exist. Many of his arguments, besides being frivolous, were not raised at the CDP hearing, and we will not address them. See Magana v. Commissioner, 118 T.C. 488, 493 (2002). We have boiled down his arguments to the two theories that we discerned him to have raised in Best, T.C. Memo. 2014-72, at \*9. He attached his brief in Best as an exhibit to his response to the instant motion for summary judgment and to his submissions to SO Silva.

**[\*12]** 1188 (10th Cir. 2003); Roberts v. Commissioner, 118 T.C. 365, 369-371 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003). Once an assessment is made, it becomes a part of the IRS' official records with respect to a taxpayer. A taxpayer's account transcripts reflect the information included in these official records. See Armstrong v. Commissioner, T.C. Memo. 2002-224, 84 T.C.M. (CCH) 287, 291 n.9.[6]

Petitioners contend that SO Silva abused her discretion by relying on their account transcript to verify that the 2004 assessment had been properly made. There is no basis for this contention. Section 6330(c)(1) requires the SO to verify that the requirements of applicable law and procedure have been met, but it does not require her to rely on any particular document to satisfy this verification requirement. See Craig v. Commissioner, 119 T.C. 252, 262 (2002). Nor is the officer required to provide the taxpayer with a copy of the verification that she obtained. Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002). An officer may rely on a computer transcript of the taxpayer's account to verify that the

_____

[6]A settlement officer may obtain transcripts by entering various command codes (e.g., TXMODA, SUMRY, IMFOLI, ENMOD, BMFOLI, TXMODS, and CFINK) into the IRS' integrated data retrieval system (IDRS) to obtain a particular transcript. See Kaeckell v. Commissioner, T.C. Memo. 2002-114, 83 T.C.M. (CCH) 1617, 1619 n.2. The IDRS is essentially the interface between the IRS' employees and its various computer systems. Ibid.

[*13] requirements of applicable law and administrative procedure have been met. See Sherwood v. Commissioner, T.C. Memo. 2005-268, 90 T.C.M. (CCH) 512, 515.

The parties agree on the documents SO Silva reviewed before determining that collection should proceed.  They include the 2004 account transcripts, which SO Silva provided to petitioners.  The transcripts identify petitioners and show the tax forms involved, the taxable year, the date the tax was assessed, and the amount assessed.  SO Silva therefore satisfied the verification requirement of section 6330(c)(1).

Attorney MacPherson asserts that the account transcripts are unreliable and reveal a "gross irregularity" in the administrative process because they contain "blundering errors of ignominious bureaucrats."  He observes that the 2004 account transcript at one point included notations that a deficiency notice was sent to petitioner-wife; that petitioner-wife received an SFR; and that an assessment of $16,465 was made against petitioner-wife.  In fact, these three notations properly applied only to petitioner-husband.

These misleading or erroneous computer entries appear to stem from the fact the "notice of deficiency" transaction code, which was originally posted correctly to petitioner-husband's tax module, migrated to petitioners' consolidated

**[*14]** tax module when the IRS received their untimely 2004 tax return. These mistakes, which may reflect no more than a computer keystroke error, do not lead to the result petitioners seek. It was because of these mistakes that this case was remanded to the IRS Appeals Office to enable petitioner-wife, who in fact had not received a notice of deficiency, to challenge her 2004 tax liability if she wished. At this point, we are reviewing the supplemental notice of determination, which was issued after these errors were detected and corrected. See Kelby v. Commissioner, 130 T.C. 79, 86 (2008). None of these errors has any bearing on the transcript entries showing $12,058 of net assessed tax for 2004, which is the exact amount of tax that petitioners self-reported on their late-filed 2004 return.[7]

In sum, the misleading or erroneous computer entries petitioners cite indicate no irregularity in the IRS assessment procedure and raise no question as to whether the assessment was validly made in accordance with the requirements of section 301.6203-1, Proced. & Admin. Regs. SO Silva did not abuse her discretion when she relied on the computerized transcripts of petitioners' account to verify that their unpaid tax liability for 2004 had properly been assessed.

---

[7]Attorney MacPherson notes that petitioners' transcripts at one point indicated (incorrectly) that they had received a Letter 105C, Claim Disallowance Letter. This notation was corrected during the supplemental hearing process and thus is not an issue here. It neither indicates an irregularity in the IRS assessment procedure nor raises a question as to whether the assessment was validly made.

**[*15]** B.     Assessments and Evidence Thereof

Petitioners next contend that the IRS cannot collect their tax liability for 2004 because SO Silva violated the requirement of section 6203 that, "[u]pon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment." Here again, petitioners contend that the computerized transcript of their 2004 account and the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, are insufficient to satisfy the Secretary's duty. Petitioners insist that they are entitled to a copy of an assessment source document with original signatures coupled with a delegation order proving that the assessing officer was authorized to make the assessment. Petitioners contend that the SO abused her discretion by declining to supply them with copies of these documents.

Again we disagree. Upon request under section 6203, the taxpayer "shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." Sec. 301.6203-1, Proced. & Admin. Regs. We have consistently held that the IRS is not required to furnish the taxpayer with any particular document or form, so long as the document provided supplies the information listed in this regulation. See Roberts v. Commis-

[*16] sioner, 118 T.C. at 370 n.7; Best, T.C. Memo. 2014-72, at *16; Battle v.

Commissioner, T.C. Memo. 2009-171, 98 T.C.M. (CCH) 45, 48.  The Court of

Appeals for the Ninth Circuit agrees.  See Koff v. United States, 3 F.3d 1297,

1298 (9th Cir. 1993).

SO Silva furnished Attorney MacPherson copies of the 2004 account trans-

cripts, which supplied all the information listed in section 301.6203-1, Proced. &

Admin. Regs.  Respondent's counsel also furnished Attorney MacPherson with a

copy of petitioners' Form 4340, which likewise supplies all of the required

information.  If petitioners' receipt of the account transcripts does not fulfill the

IRS' obligation to furnish them the pertinent records of assessment, then their

receipt of the Form 4340 certainly does.  See Best, T.C. Memo. 2014-72, at *18.

SO Silva's refusal to supply petitioners with delegation orders and assessment

source documents containing original signatures, far from being an abuse of dis-

cretion, was entirely proper.  We will accordingly grant respondent's motion for

summary judgment and sustain the levy.[8]

---

[8]In this case, as in Nestor v. Commissioner, 118 T.C. 162 (2002), and Best,
T.C. Memo. 2014-72, the Form 4340 was supplied to the taxpayers not by the
settlement officer during the CDP hearing but by respondent's counsel after the
case was docketed in this Court.  We conclude here, as we concluded in those
cases, that no purpose would be served by remanding this case a second time to
the IRS Appeals Office so that SO Silva could supply petitioners with another

(continued...)

**[\*17]** IV.     Section 6673(a)(1) Penalty

We are authorized to require a taxpayer to pay to the United States a penalty of up to $25,000 whenever it appears that the taxpayer has instituted or maintained proceedings before us primarily for delay or that the taxpayer's position in the proceedings is frivolous or groundless.  Sec. 6673(a)(1); see, e.g., Wnuck v. Commissioner, 136 T.C. 498, 513-514 (2011).  A taxpayer's position is frivolous if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law.  E.g., Goff v. Commissioner, 135 T.C. 231, 237 (2010).  The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled tax principles before they file returns and litigate.  Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986); Best, T.C. Memo. 2014-72, at \*22; Grasselli v. Commissioner, T.C. Memo. 1994-581.

Respondent has also moved that we impose a section 6673 penalty because petitioners instituted this proceeding primarily to delay collection and because their positions are frivolous or groundless.  As shown above, many of the arguments advanced by Attorney MacPherson indeed lack merit and are contrary to established law.  The IRS has issued public guidance clearly describing the re-

---

⁸(...continued)
copy of the Form 4340 that they already have.  See Nestor, 118 T.C. at 167; Best, T.C. Memo. 2014-72, at \*18.

**[*18]** quirements of section 6203, the procedures implementing that section, and the procedures for answering taxpayer requests for copies of records of assessment. See Rev. Rul. 2007-21, 2007-1 C.B. 865, 866. Additionally, Notice 2010-33, supra, lists positions that the IRS has identified as "frivolous" for purposes of the section 6702 penalty for making "frivolous tax submissions." This Notice explicitly characterizes as "frivolous" the submission that:

> Verification under section 6330 that the requirements of any applicable law or administrative procedure have been met may only be based on one or more particular forms or documents (which must be in a certain format), such as a summary record of assessment, or that the particular forms or documents or the ones on which verification was actually determined must be provided to a taxpayer at a collection due process hearing.

Id., 2010-17 I.R.B. at 611-612.

These are precisely the submissions that Attorney MacPherson, on petitioners' behalf, made to this Court. He nevertheless argues that petitioners should not be sanctioned because they are "far from sophisticated," have "no more than a high school education," and "in good faith relied upon their experienced, competent counsel of many years." We rejected these defenses in Best, T.C. Memo. 2014-72, at *20-*22, where Attorney MacPherson advanced substantially identical and equally frivolous theories on behalf of similarly situated taxpayers. For the same reasons, we reject those defenses here. However, since respondent

**[\*19]** (to his credit) did acknowledge an error that supported remand of this case to the IRS Appeals Office, there was at least a scintilla of support for a portion of petitioners' original position.  We accordingly conclude that a relatively modest penalty is justified and that they should pay a section 6673(a)(1) penalty of $500 to the United States.

V.      Section 6673(a)(2) Penalty and Rule 33(b)

Section 6673(a)(2)(A) provides that "[w]henever it appears to the Tax Court that any attorney * * * has multiplied the proceedings in any case unreasonably and vexatiously," we may require that the attorney "pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." We may sua sponte impose such costs on the offending attorney.  See Waltner v. Commissioner, T.C. Memo. 2014-133, at *23; Best, T.C. Memo. 2014-72, at *23; Edwards v. Commissioner, T.C. Memo. 2002-169, aff'd, 119 Fed. Appx. 293 (D.C. Cir. 2005); Leach v. Commissioner, T.C. Memo. 1993-215.  Rule 33(b) sets standards in connection with counsel's signature on a pleading and provides that the Court, on its own motion, may sanction counsel for failure to meet those standards.

We believe that Attorney MacPherson may be deserving of sanction for unreasonably and unnecessarily prolonging these proceedings.  After the case was

[*20] docketed in this Court, respondent's counsel explicitly notified him that his assessment-focused arguments had been identified as "frivolous" in Notice 2010-33, <u>supra</u>. The case was subsequently remanded to the IRS Appeals Office to enable petitioner-wife, if she wished, to challenge her underlying tax liability for 2004. Rather than advance a good-faith argument (if one existed) concerning that liability, Attorney MacPherson continued to press the same assessment-focused arguments that he had just been told were frivolous. He then persisted in advancing those same arguments, for a second time, in this Court. Attorney MacPherson, like the taxpayers in <u>Best</u>, T.C. Memo. 2014-72, at *21, "could have pulled the plug * * * [earlier] and very likely avoided any sanction." He chose not to do so.

Since Attorney MacPherson has not yet had an opportunity to defend against these potential sanctions, we will afford him that opportunity by ordering him to show cause why we should not sanction him pursuant to Rule 33(b) or impose on him excessive costs pursuant to section 6673(a)(2). We will also order respondent to express his position on the latter issue and provide us with computations of the excess costs, expenses, and attorney's fees reasonably incurred on account of Attorney MacPherson's conduct.

**[*21]**   To reflect the foregoing,

Appropriate orders will be issued, and decision will be entered for respondent.