T.C. Memo. 2016-43

UNITED STATES TAX COURT

HOWARD E. MAY AND ESTATE OF JUDITH A. MAY, DECEASED,
MARCIA M. MAY, PERSONAL REPRESENTATIVE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 14545-12L.                    Filed March 8, 2016.

Donald W. MacPherson and Bradley S. MacPherson, for petitioners.

Brandon A. Keim, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

LAUBER, Judge: In our prior report in this case, we held that respondent

may proceed with collection of petitioners' unpaid 2004 Federal income tax

_____

[*]This opinion supplements our previously filed Memorandum Opinion in May v. Commissioner, T.C. Memo. 2014-194.

**[\*2]** liability; decided that petitioners shall pay a penalty of $500 to the United States under section 6673(a)(1); and contemplated sanctioning petitioners' counsel, Donald W. MacPherson (Mr. MacPherson), for advancing frivolous arguments and unnecessarily prolonging these proceedings.[1] By order dated September 26, 2014, we ordered Mr. MacPherson to show cause why we should not require him to pay respondent's excess costs pursuant to section 6673(a)(2) or sanction him pursuant to Rule 33(b). We also asked respondent to express his view as to whether the Court should sanction Mr. MacPherson and to provide a computation of any excess costs that the Internal Revenue Service (IRS) had incurred. Having considered their responses, we will order Mr. MacPherson to pay respondent's excess costs of $7,188.

## Background

Neither Howard May nor Judith May, then husband and wife, filed a timely Federal income tax return for 2004. The IRS prepared a substitute for return (SFR) for petitioner-husband using third-party information and issued a notice of deficiency to him in 2010. The IRS did not prepare an SFR for petitioner-wife and

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar. All references to "Mr. MacPherson" are to Donald W. MacPherson, and not to Bradley S. MacPherson, who subsequently entered an appearance in this case.

**[*3]** did not issue a notice of deficiency to her.[2] Petitioner-husband did not seek redetermination of the deficiency in this Court and the IRS assessed the deficiency.

In early 2011 petitioners jointly submitted a Form 1040, U.S. Individual Income Tax Return, for 2004. The IRS thereupon combined its computer-based tax modules for petitioner-husband and petitioner-wife. As a result of that combination, petitioners' consolidated Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 2004 indicated (incorrectly) that the IRS had issued notices of deficiency both to petitioner-husband and to petitioner-wife. That was because the "notice of deficiency" transaction code, which was originally posted correctly to petitioner-husband's tax module, migrated to petitioners' consolidated tax module after the IRS received their untimely 2004 joint return. This computer entry was later corrected.

After receiving the late-filed 2004 return, the IRS abated the tax previously assessed against petitioner-husband in an amount necessary to conform the assessment to the amount petitioners had self-reported. Accordingly, petitioners' Form 4340 for 2004, as of year end 2012, reflected the following: $16,465 of tax as-

---

[2]Judith May died in 2013 and was replaced as a party by her estate's personal representative. For convenience, we will continue to refer to Howard May's deceased wife as "petitioner-wife."

[*4] sessed on August 30, 2010; $4,407 of tax abated on May 2, 2011; and $12,058 of net assessed tax. The net assessed tax reflects the tax that petitioners self-reported on their late-filed return, which they had not paid in full.

The IRS initiated proceedings to collect petitioners' unpaid 2004 tax liability. On October 10, 2011, the IRS sent petitioners a Final Notice of Intent to Levy and Notice of Your Right to a Hearing, and petitioners timely requested a collection due process (CDP) hearing. In their request petitioners stated that they intended to seek relief through collection alternatives, hardship waivers, penalty abatement, and a challenge to their underlying tax liability for 2004. Petitioners also demanded that the IRS "produce 23c, RACS 006 and any other assessment documents"; a signed assessment document "with legible signatures and [the] typed name of [the] officer who signed"; and the delegation order authorizing the assessment officer to sign the assessment.

The CDP hearing was assigned to Settlement Officer Silva (SO Silva). SO Silva sent a letter to petitioners and Mr. MacPherson scheduling a telephone CDP hearing for March 6, 2012. The letter explained that, if petitioners wished the IRS to consider collection alternatives, they should provide before the conference a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, along with supporting financial information.

**[*5]**  On February 7, 2012, Mr. MacPherson wrote SO Silva to request an extension of time to provide the requested documents.  SO Silva granted that request, but Mr. MacPherson submitted no documents by the extended deadline.  On March 6, 2012, the day of the scheduled hearing, SO Silva received a fax from Mr. MacPherson requesting that the hearing be continued.  SO Silva granted that request and rescheduled the hearing for March 14, 2012.  SO Silva called Mr. MacPherson at the rescheduled hearing time, but he was not available.

Later that day, SO Silva sent petitioners a letter, with a copy to Mr. MacPherson, noting that Mr. MacPherson had been unavailable for the hearing and that she had not received any documents relevant to consideration of collection alternatives.  Mr. MacPherson called SO Silva the next day to say that he had been ill and was confused about the rescheduled hearing.  SO Silva granted him an extension of time until March 28, 2012, to submit the required financial information.  Mr. MacPherson submitted no relevant documents by that date.  Instead he submitted, on March 29, 2012, another letter demanding that the IRS produce delegation orders, certificates of assessment with original signatures, and so on.

At this point SO Silva reviewed the computer transcripts of petitioners' 2004 account and concluded that the requirements of applicable law and adminis-

[*6] trative procedure had been met. She confirmed that the net assessed tax for 2004, which corresponded to the tax liability petitioners had self-reported on their late-filed 2004 return, had been properly assessed. She determined that petitioners were not entitled to consideration of a collection alternative because they had failed to provide the required financial information despite several extensions of time in which to do so. She accordingly closed the case and, on May 8, 2012, the IRS sent petitioners a notice of determination sustaining the collection action.

Shortly before the scheduled CDP hearing, Mr. MacPherson had filed with the IRS a Freedom of Information Act (FOIA) request seeking copies of "the forms 23C, 4340, RACS006 and any other assessment documents" for petitioners' 2001-2010 tax years. On April 2, 2012, the IRS disclosure office supplied him with the requested documents, stating that "[t]his is a full grant of your request." The cover letter noted that "the Form 23C and Revenue Accounting Control System (RACS) 006 reports are a summary record of assessment that does not identify specific taxpayers by name."

On June 7, 2012, petitioners timely petitioned this Court for review. The only ground of error alleged in the petition, prepared and signed by Mr. MacPherson, concerned the supposed impropriety of the assessment for 2004. The petition acknowledged that petitioners "agreed to" that assessment by self-reporting a lia-

[*7] bility in that amount on their late-filed 2004 return. The petition nevertheless contended that the assessment "was not legally made" because the IRS had not supplied "a proper assessment document" bearing "the signature of the assessment officer" together with a copy of the delegation order authorizing the officer to make the assessment. The petition alleged that petitioners had "requested of respondent a summary record of assessment Form 23C, RACS 006, and a Form 4340" but that "respondent failed to supply petitioners with a Form 23C, RACS006 [or] Form 4340." Mr. MacPherson advanced this contention even though the IRS had provided those documents to him on April 2, 2012, in response to his FOIA request.

On August 1, 2012, after filing his answer, counsel for respondent notified Mr. MacPherson that the assessment-focused arguments he advanced in the petition had been identified, in Notice 2010-33, 2010-17 I.R.B. 609, as frivolous tax positions. This letter advised Mr. MacPherson that, if he persisted in pressing such arguments, respondent would ask the Court to impose a penalty for taking a "frivolous or groundless" position in a Tax Court proceeding or instituting such proceeding "primarily for delay." See sec. 6673(a)(1)(A) and (B).

In early 2013 counsel for respondent discovered that petitioner-wife should have been afforded an opportunity to dispute her 2004 tax liability at the CDP

[*8] hearing because she (unlike petitioner-husband) had not received a notice of deficiency. Respondent accordingly moved to remand the case to the IRS Appeals Office for a supplemental CDP hearing to give petitioner-wife "an opportunity to provide evidence disputing [her] underlying liability" for 2004. Petitioners did not oppose that request, and we granted it.

Mr. MacPherson represented petitioner-wife at the supplemental hearing. During that hearing he advanced no arguments and submitted no evidence concerning her actual tax liability for 2004, which was the stated purpose for the remand. Rather, he advanced the same series of assessment-focused contentions that he had previously been warned were frivolous. SO Silva again reviewed petitioners' account transcripts and confirmed that petitioner-wife's tax liability for 2004 had been properly assessed in the amount that she had self-reported on her delinquent return. SO Silva further determined that petitioners had not submitted, either at the original or the supplemental CDP hearing, any documentation that would entitle them to consideration of a collection alternative. On May 29, 2013, the IRS issued a supplemental notice of determination sustaining the proposed collection action.

On July 26, 2013, Mr. MacPherson filed on petitioners' behalf an amendment to petition. It alleged that SO Silva's actions in connection with the sup-

**[\*9]** plemental hearing "emphasize[d] the need for production by respondent to petitioners of a Form 23C or RACS 006." Mr. MacPherson advanced this contention even though he was already in possession of those assessment documents.

On September 18, 2013, respondent moved for summary judgment and for imposition of a penalty under section 6673(a). Mr. MacPherson filed a response (including 17 exhibits) that totaled 159 pages. From this welter of paper we discerned two theories. First, he contended that SO Silva had abused her discretion by relying on computerized account transcripts, rather than physical source documents, to verify that the IRS had properly assessed petitioners' self-reported tax liabilities. Second, he contended that these liabilities were not owed, or were per se uncollectible, because SO Silva failed to furnish petitioners with copies of signed records of assessment accompanied by a delegation order attesting to the assessing official's capacity to assess.[3]

In <u>May v. Commissioner</u>, T.C. Memo. 2014-194, we rejected both arguments and granted summary judgment for respondent. First, we held that SO Silva could properly rely on the computerized account transcripts for petitioners'

---

[3]The arguments Mr. MacPherson advanced ranged from accusing the IRS of defrauding the public to asserting that sec. 301.6203-1, Proced. & Admin. Regs., should be invalidated because it mentions district and regional directors, positions that no longer exist. Many of his arguments, besides being frivolous, were not raised at the CDP hearing, and we therefore declined to address them.

[*10] account, as opposed to original source documents, to verify that the 2004 assessments had been properly made, noting established case law to this effect. See, e.g., Craig v. Commissioner, 119 T.C. 252, 262 (2002) (holding that section 6330(c)(1) does not "mandate that the Appeals officer actually give a taxpayer a copy of the verification upon which the Appeals officer relied"); Sherwood v. Commissioner, T.C. Memo. 2005-268, 90 T.C.M. (CCH) 512, 515.  Second, we held that SO Silva's refusal to supply petitioners with delegation orders and assessment source documents containing original signatures was entirely proper and provided no basis on which they could challenge their tax liability for 2004, again noting established case law to this effect.  See Koff v. United States, 3 F.3d 1297, 1298 (9th Cir. 1993); Roberts v. Commissioner, 118 T.C. 365, 370 n.7 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003); Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002) ("There is no requirement under internal revenue laws or regulations that the Appeals officer give the taxpayer a copy of the delegation * * * [order] from the Secretary to the person * * * who signed the verification required under section 6330(c)(1))."); Battle v. Commissioner, T.C. Memo. 2009-171, 98 T.C.M. (CCH) 45, 48.

We further held that petitioners' assessment-focused arguments were frivolous and had been interposed solely to delay the collection of their 2004 tax liabili-

**[\*11]** ty. <u>May v. Commissioner</u>, at \*17-\*19. Because respondent (to his credit) had acknowledged an error that supported remand of the case to the IRS Appeals Office, we found at least a scintilla of support for a portion of petitioners' original position. We accordingly concluded that a relatively modest penalty was justified and required petitioners to pay to the United States a section 6673(a)(1) penalty of $500.

Finally, we concluded that Mr. MacPherson could be deserving of sanction under section 6673(a)(2) or Rule 33(b) for advancing frivolous arguments and unnecessarily prolonging the proceedings. We ordered him to show cause why he should not be sanctioned. We concurrently ordered respondent to express his views on this point and to furnish the Court with computations of any excess costs the IRS had incurred on account of Mr. MacPherson's conduct.

On October 24, 2014, Mr. MacPherson filed on behalf of petitioners a motion for reconsideration (including 52 exhibits) that totaled 259 pages. This document presented rambling variations on the assessment-focused arguments that the Court had rejected in its opinion. Mr. MacPherson concurrently filed a separate 42-page motion for reconsideration, supposedly on his own behalf. This asserted that the regulation governing "method of assessment," section 301.6203-1, Proced. & Admin. Regs., was invalid when promulgated in 1954 because the

**[\*12]** Department of the Treasury had allowed an insufficient number of days for public notice and comment. Petitioners had not advanced this argument previously at any stage of this litigation, and it was not addressed in the Court's opinion. We denied both motions for reconsideration.

On November 10, 2014, respondent filed a response to our order concerning sanctions. In respondent's view, "the tactics used in this case were designed to delay collection because, with the exception of the underlying liability challenge that was quickly abandoned on remand, the pleadings and other filings in this case raised nothing but frivolous, groundless, and statutorily-precluded arguments, which could have no purpose but to delay collection." Respondent sought attorney's fees only for the period after May 29, 2013, the date on which the supplemental notice of determination was issued. During that period, respondent's trial attorney logged 24.75 hours and a law clerk logged 34.75 hours, chiefly in preparing respondent's motion for summary judgment with supporting memorandum and affidavit. Employing hourly rates of $150 and $100, respectively, respondent requested that we award excess costs of $7,188. Mr. MacPherson does not challenge the reasonableness of these rates but contends that the 59.5 hours expended were excessive.

**[\*13]** On December 3, 2014, Mr. MacPherson filed a response to our order concerning sanctions that totaled (including exhibits) 299 pages. This document was largely cut and pasted from his 259-page motion for reconsideration. It reiterated the assessment-focused arguments he had made previously.

Discussion

Section 6673(a)(2)(A) provides that "[w]henever it appears to the Tax Court that any attorney * * * has multiplied the proceedings in any case unreasonably and vexatiously," we may require that the attorney "pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." We may sua sponte impose such costs on the offending attorney. See Waltner v. Commissioner, T.C. Memo. 2014-133, at \*23; Edwards v. Commissioner, T.C. Memo. 2002-169, aff'd, 119 F. App'x 293 (D.C. Cir. 2005); Leach v. Commissioner, T.C. Memo. 1993-215.

Shortly after this case was docketed in this Court, respondent's counsel notified Mr. MacPherson that his assessment-focused arguments had been identified as "frivolous" in Notice 2010-33, supra. This Notice explicitly characterizes as "frivolous" the submission that

> [v]erification under section 6330 that the requirements of any applicable law or administrative procedure have been met may only be based on one or more particular forms or documents (which must be

**[\*14]** in a certain format), such as a summary record of assessment, or that the particular forms or documents or the ones on which verification was actually determined must be provided to a taxpayer at a collection due process hearing. [Id., 2010-17 I.R.B. at 611-612.]

These are precisely the arguments that Mr. MacPherson has advanced at every stage of this proceeding.

The case was later remanded to the IRS Appeals Office to enable petitioner-wife, if she wished, to challenge her underlying tax liability for 2004. Rather than advance a good-faith argument (if one existed) concerning that liability, Mr. Mac-Pherson continued to press the same assessment-focused arguments that he had recently been told were frivolous. He then persisted in advancing those same arguments repeatedly in this Court. These arguments were frivolous, not only in a legal, but also in a factual sense. He argued again and again that "respondent failed to supply petitioners with a Form 23C, RACS006 [or] Form 4340" even though the IRS had provided those documents to him, months or years earlier, in response to his FOIA request.

Mr. MacPherson also represented the taxpayers in Best v. Commissioner, T.C. Memo. 2014-72. He advanced on behalf of those taxpayers, and we found frivolous, exactly the same assessment-focused arguments that we have found frivolous here. In a Supplemental Memorandum Opinion in Best, we concluded that

**[\*15]** Mr. MacPherson, by advancing these arguments, had "multiplied the proceedings * * * unreasonably and vexatiously," sec. 6673(a)(2), and required him to pay the excess costs incurred by respondent, <u>Best v. Commissioner</u>, T.C. Memo. 2016-32, at \*20-\*21. For the reasons stated at length in that opinion, we reach the same conclusion here. We find that Mr. MacPherson knowingly or recklessly advanced arguments that he knew were frivolous and lacking in any legal basis. Because his actions thus manifested subjective bad faith, they are deserving of sanction under section 6673(a)(2). <u>See</u> <u>Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)</u>, 78 F.3d 431, 436 (9th Cir. 1996); <u>Reliance Ins. Co. v. Sweeney Corp</u>. 792 F.2d 1137, 1138 (D.C. Cir. 1986); <u>Takaba v. Commissioner</u>, 119 T.C. 285, 296-297 (2002).[4]

As in <u>Best</u>, we will limit our sanctions to the lodestar amount submitted by respondent, which covers attorney's fees incurred during the period after the supplemental notice of determination was issued. Mr. MacPherson does not chal-

---

[4]For the reasons stated in our Supplemental Memorandum Opinion in <u>Best</u>, T.C. Memo. 2016-32, at \*16, we find that Mr. MacPherson's conduct also violated Rule 33(b) and the Model Rules of Professional Conduct. Rule 33(b) clearly imposes "an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." <u>Versteeg v. Commissioner</u>, 91 T.C. 339, 343 (1988). Mr. MacPherson advanced arguments that were legally and factually baseless, and we find that his arguments to modify or reverse existing law were not made in good faith. He has intentionally abused the judicial process, and we may sanction him for that.

**[\*16]** lenge the reasonableness of the hourly rates respondent employed or the number of hours his personnel logged, contending only that the number of hours was excessive relative to the tasks performed. We do not find 59.5 hours to be an excessive amount of time for preparing a 37-page memorandum in support of summary judgment, a supporting affidavit, and miscellaneous court papers during this period. We will accordingly make absolute the order to show cause and award the United States $7,188 as a penalty imposed against Mr. MacPherson under section 6673(a)(2).

To reflect the foregoing,

<u>The order to show cause will be made absolute</u>.