T.C. Memo. 2019-27

UNITED STATES TAX COURT

MARTIN G. PLOTKIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16224-14L.                    Filed April 4, 2019.

Martin G. Plotkin, for himself.

<u>Miriam C. Dillard</u> and <u>Mark J. Tober</u>, for respondent.

CONTENTS

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1.    The 1994 assessment of self-reported liabilities for tax years
      1991-93; the 2004 writeoff of the self-reported liabilities
      for tax years 1991-93; the 2012 Tax Court deficiency decision
      for tax years 1991-95; and the 2012 reversal of the 2004
      writeoffs of the self-reported liabilities for tax years 1991-93 . . . . . . . . . . . 5

2.    The intended levy, the collection-review hearing, and the
      collection-review determination for tax years 1991-95. . . . . . . . . . . . . . . 10

**[*2] 3.** Procedural history of this case. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    a. Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    b. Respondent's prior summary-judgment motion . . . . . . . . . . . . . . . . 23

    c. Respondent's current summary-judgment motion . . . . . . . . . . . . . . 23

    d. Petitioner's October 16, 2017 motion for partial summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    e. Petitioner's November 8, 2017 motion for partial summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    f. Petitioner's November 15, 2017 response to respondent's motion for summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . 27

    g. Respondent's February 5, 2018 reply to petitioner's response to respondent's motion for summary judgment . . . . . . . . . 29

    h. Respondent's February 21, 2018 supplement to his reply to petitioner's response to respondent's motion for summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    i. Petitioner's February 27, 2018 motion for summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

    j. Petitioner's March 15, 2018 sur-reply to respondent's February 5, 2018 reply to petitioner's response to respondent's motion for summary judgment. . . . . . . . . . . . . . . . . . 34

    k. Petitioner's April 2, 2018 supplement to his February 27, 2018 motion for summary judgment . . . . . . . . . . . . . . 36

    l. Respondent's April 30, 2018 reply to petitioner's February 27, 2018 motion for summary judgment, as supplemented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**[*3]** Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

1.  Uncollectibility of the self-reported 1991, 1992, and 1993
    tax and related penalties and interest. . . . . . . . . . . . . . . . . . . . . . . . . . 40

2.  The Office of Appeals' failure to address petitioner's concern
    that proposing a collection alternative would waive his right to
    challenge the underlying tax liabilities . . . . . . . . . . . . . . . . . . . . . . . . 41

3.  Which transcripts the Office of Appeals used for verification . . . . . . . . . 43

4.  Invalidity of the notice of deficiency. . . . . . . . . . . . . . . . . . . . . . . . . . 46

5.  Section 7485. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

6.  Prohibited communications with the Office of Chief Counsel . . . . . . . . . 51

7.  Only Social Security income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

8.  Identity theft. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

9.  Law-of-the-case doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

10. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

MEMORANDUM OPINION

MORRISON, <u>Judge</u>:  On June 9, 2014, the Internal Revenue Service (IRS)

Office of Appeals determined to sustain a proposed levy to collect income-tax

**[*4]** liabilities from petitioner for tax years 1991, 1992, 1993, 1994, and 1995.

Petitioner filed a timely petition. We have jurisdiction under section 6330(d)(1).[1]

Both parties have filed motions for summary judgment. Respondent urges the Court to sustain the determination. Petitioner urges the Court not to sustain the determination. We sustain the determination except as to collection activity regarding (a) the self-reported tax (and related additions to tax and interest) totaling $4,823.18 for 1991, $7,590.38 for 1992, and $2,660.12 for 1993 and (b) $6,000 of the unreported tax for 1995.

## Background

The following facts are not in dispute. They are derived from the pleadings, the parties' motion papers, and the supporting exhibits thereto. There is also an explanation of the relevant text of the Tax Court and U.S. Court of Appeals opinions in Plotkin v. Commissioner, T.C. Memo. 2011-260, aff'd, 498 F. App'x 954 (11th Cir. 2012). We take judicial notice of that text to determine what the respective courts decided. See Fed. R. Evid. 201; see also Estate of Reis v. Commissioner, 87 T.C. 1016, 1027-1028 (1986).

---

[1]Unless otherwise indicated, all references to sections are to the Internal Revenue Code of 1986, as amended, and all references to Rules are to the Tax Court Rules of Practice and Procedure.

**[\*5]** Petitioner was a resident of Florida when he filed his petition in this case. We follow the opinions of the U.S. Court of Appeals for the circuit which would be the proper appellate venue. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). The appellate venue in this case, because the petition was filed before December 18, 2015, is determined by the rules in section 7482(b) before the amendments by the Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, sec. 423(a), 129 Stat. at 3123 (2015). We need not determine the proper circuit because it would not affect our holding.

1.  <u>The 1994 assessment of self-reported liabilities for tax years 1991-93; the 2004 writeoff of the self-reported liabilities for tax years 1991-93; the 2012 Tax Court deficiency decision for tax years 1991-95; and the 2012 reversal of the 2004 writeoffs of the self-reported liabilities for tax years 1991-93</u>

In 1994 petitioner filed tax returns reporting the following income-tax liabilities:

| Tax year | Tax reported |
|----------|--------------|
| 1991 | $2,981 |
| 1992 | 5,157 |
| 1993 | 2,044 |

In 1994 respondent assessed these reported tax liabilities as well as related interest and additions to tax. The dates of assessment were as follows: October 3,

[*6] 1994, for the 1991 tax year; November 14, 1994, for the 1992 tax year; and October 10, 1994, for the 1993 tax year. The amounts assessed are set forth in the table below:

| Tax year | Self- reported tax liability | Late- filing addition to tax | Late- payment addition to tax | Estimated tax addition to tax | Interest | Fees and other expenses for collection | Total |
|---|---|---|---|---|---|---|---|
| 1991 | $2,981 | $670.73 | $447.15 | --- | $719.80 | $4.50 | $4,823.18 |
| 1992 | 5,157 | 1,160.33 | 352.83 | $144.46 | 775.76 | --- | 7,590.38 |
| 1993 | 2,044 | 459.90 | 61.32 | --- | 94.90 | --- | 2,660.12 |

Respondent had 10 years from the dates of assessment to collect these amounts. See sec. 6502(a)(1).

In 2004 the various 10-year periods ended without respondent's having collected any of the assessed amounts. Respondent made writeoff entries in his records to reflect that the assessments for 1991, 1992, and 1993 were uncollectible because the 10-year periods had ended. The amounts of the liabilities recorded as uncollectible were $4,823.18 for 1991, $7,590.38 for 1992, and $2,660.12 for 1993.

[*7]   On April 22, 2008, respondent mailed petitioner a notice of deficiency for tax years 1991, 1992, 1993, 1994, and 1995.[2]  The notice of deficiency showed that respondent had determined the following deficiencies, additions to tax, and penalties:

| | | Additions to tax | | | Penalty |
|---|---|---|---|---|---|
| Tax year | Deficiency | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 | Sec. 6663(a) |
| 1991 | $108,652 | --- | --- | --- | $78,447.75 |
| 1992 | 61,885 | --- | --- | --- | 46,413.75 |
| 1993 | 52,397 | --- | --- | --- | 39,297.75 |
| 1994 | 45,490 | $32,980.25 | $11,372.50 | $2,343.73 | --- |
| 1995 | 320,852 | 232,617.70 | 80,213 | 17,515.76 | --- |

In 2008 petitioner filed a timely petition with the Tax Court for redetermination of the amounts determined in the notice of deficiency as deficiencies, additions to tax, and penalties.  The Tax Court assigned docket No. 17775-08 to this deficiency case.

On November 3, 2011, the Tax Court issued a Memorandum Opinion in the deficiency case.  Plotkin v. Commissioner, T.C. Memo. 2011-260.  Among other things, the Tax Court found that petitioner was not a partner in the limited partnership Rolla Health Care Associates, L.P. (Rolla).  Id., slip. op. at 4-6.

---

[2]Before respondent can assess a deficiency, which is generally an amount of tax imposed greater than that reported on a taxpayer's return, he must first mail the taxpayer a notice of deficiency.  Secs. 6211(a), 6212(a), 6213(a).

[*8] On January 27, 2012, the Tax Court entered a decision in the deficiency case in the following amounts:

| Tax year | Deficiency | Additions to tax | | | Penalty |
| | | Sec. 6651(f) | Sec. 6651(a)(2) | Sec. 6654 | Sec. 6663(a) |
| --- | --- | --- | --- | --- | --- |
| 1991 | $108,652 | --- | --- | --- | $78,447.75 |
| 1992 | 61,885 | --- | --- | --- | 46,413.75 |
| 1993 | 52,397 | --- | --- | --- | 39,297.75 |
| 1994 | 45,490 | $32,980.25 | --- | $2,343.73 | --- |
| 1995 | 66,031 | --- | --- | 3,604.75 | --- |

The amounts of the Court's decision were the same as the amounts determined in the notice of deficiency except that (1) the deficiency amount for 1995 was less, (2) the amount of the section 6654 addition to tax for 1995 was less, (3) no section 6651(a)(2) addition to tax was sustained for 1994 or 1995, and (4) no section 6651(f) addition to tax was sustained for 1995.

On February 1, 2012, petitioner filed a notice of appeal with the Tax Court in his deficiency case. He did not file an appeal bond.

On March 5, 2012, respondent assessed the deficiencies, additions to tax, and penalties redetermined by the Tax Court in the deficiency case. However, because of a typographical error, the amount assessed as a deficiency for 1995 was $60,031 instead of $66,031. Respondent does not seek to correct this error, which is in petitioner's favor.

**[*9]**   Also on March 5, 2012, respondent reversed his 2004 writeoffs of the 1991, 1992, and 1993 liabilities related to petitioner's self-reported tax for those years, including interest and additions to tax.  Thus, according to respondent's records after this reinstatement of the liabilities, the following amounts were still collectible:  $4,823.18 for 1991, $7,590.38 for 1992, and $2,660.12 for 1993.

On November 27, 2012, the U.S. Court of Appeals for the Eleventh Circuit issued an opinion affirming the decision of the Tax Court in the deficiency case. Plotkin v. Commissioner, 498 F. App'x 954 (No. 12-10620).  The opinion stated that on appeal petitioner had argued for the first time that the Tax Court did not have jurisdiction because he was a partner in Rolla and no partnership-level proceeding had been conducted.  Id. at 961 n.4.  The opinion stated that the Court of Appeals rejected the argument because, among other reasons, the Tax Court had found that he was not a partner in Rolla.  Id.

On February 11, 2013, the following notation was added to respondent's narrative-history record for petitioner's 1992 tax year:

> TC340 interest computation dated 03/05/2012 erroneously includes accruals on $7,590.38 deficiency with a CSED [Collection Statute Expiration Date] that expired 11/14/2004; interest/penalty accruals on expired CSED deficiencies should not be assessed because those amounts cannot be collected.  The same issue exists for tax years 1991 and 1993.

**[\*10]** Petitioner contends that this entry suggests that its author thought the March 5, 2012 reversal of the writeoffs of self-reported tax (and related penalties and interest) for 1991, 1992, and 1993 was improper. Respondent now concedes that the March 5, 2012 reversal of the writeoffs for 1991, and 1992, 1993 was improper.

On February 22, 2013, petitioner filed a petition for certiorari with the U.S. Supreme Court. On April 15, 2013, the U.S. Supreme Court denied the certiorari petition. Plotkin v. Commissioner, 569 U.S. 933 (2013).

On May 9, 2013, petitioner filed a petition for rehearing of the U.S. Supreme Court's denial of his certiorari petition. On June 10, 2013, the U.S. Supreme Court denied petitioner's motion for rehearing. Plotkin v. Commissioner, 569 U.S. 1040 (Mem.).

2.  The intended levy, the collection-review hearing, and the collection-review determination for tax years 1991-95

On July 29, 2013, respondent issued a notice of intent to levy and notice of right to a hearing to petitioner. The notice of intent to levy stated that respondent intended to levy to collect the following amounts:

| [*11] Form No. | Tax year | Unpaid from prior notices | Add'l penalty | Add'l interest | Amount you owe |
|---|---|---|---|---|---|
| 1040 | 1991 | $732,197.89 | --- | --- | $732,197.89 |
| 1040 | 1992 | 406,641.23 | $11,397.14 | --- | 418,038.37 |
| 1040 | 1993 | 312,357.85 | --- | --- | 312,357.85 |
| 1040 | 1994 | 242,576.49 | --- | --- | 242,576.49 |
| 1040 | 1995 | 171,260.68 | --- | --- | 171,260.68 |
| | | | | | 1,876,431.28 |

Respondent does not dispute that the amounts listed above include the writeoffs that were reversed on March 5, 2012, i.e., $4,823.18 for 1991, $7,590.38 for 1992, and $2,660.12 for 1993.

On August 27, 2013, petitioner mailed respondent a request for a collection-review hearing. The request was made on a preprinted form prepared by the IRS that had various boxes for the taxpayer to check to indicate the reason the taxpayer disagreed with the levy. Petitioner left blank the three boxes under the category "Collection Alternative". (These three boxes were labeled "Installment Agreement", "Offer in Compromise", and "I cannot pay balance".) Petitioner also left blank a box for innocent-spouse relief, which was outside the category "Collection Alternative". Instead, petitioner checked a box labeled "Other", which was outside the category "Collection Alternative". He wrote the following explanation:

[*12] Notice invalid and amounts shown incorrect[.] The requirements of the tax laws and administrative procedures as to actions the IRS must take prior to sending a notice of intent to levy or notice of levy have not been met[.] Therefore, the notice is invalid and the amounts shown are incorrect and inapplicable.

On September 13, 2013, respondent issued a notice of levy to Medigroup Westwinds Park, Inc., stating that the levy was to collect petitioner's income-tax liabilities for 1991, 1992, 1993, 1994, and 1995. The record does not reveal what the Medigroup Westwinds Park, Inc., was or its relationship to petitioner. As discussed infra, this notice of levy was premature and was later released.

On September 17, 2013, respondent sent petitioner a letter acknowledging that he had received petitioner's August 27, 2013 request for a collection-review hearing and that he had referred the case to the IRS Office of Appeals. The letter requested that petitioner fill out a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and bring a copy of the form with him to his collection-review hearing.

On October 29, 2013, the Office of Appeals sent petitioner a letter informing him that his case had been assigned to its "Fresno Campus--Butler Appeals Office". The Office of Appeals assigned Settlement Officer Valerie Chavez to handle the case.

**[*13]** On November 14, 2013, Settlement Officer Chavez made the following notation in the record of respondent known as the "case activity record": "I rcvd email from RO [Revenue Officer] Chad Adams stating that he issued a levy on tp without realizing tp had a CDP filed. He has issued a levy release." The reference to the "levy" was to the September 13, 2013 notice of levy sent to Medigroup Westwinds Park, Inc. The term "CDP filed" apparently referred to petitioner's August 27, 2013 request for a collection-review hearing, also known as a "collection due process", or CDP, hearing. The entry indicates that the levy notice to Medigroup Westwinds Parks, Inc., had been released.

On November 15, 2013, Settlement Officer Chavez made the following notation in the case activity record:

> DPLV 30-1991, 1992, 1993, 1994, 1995. No poa on file per cfink or case file.
>
> Compliance check- tp in full compliance per imfoli, only income ssi and not required to file. Earliest csed 03-05-22/susp.
>
> Research of our IDRS/ACS transcripts have found that all legal and administrative requirements for the action taken have been met; verified by review of Txmods.[3] Assessment was properly made per

---

[3]IDRS, or Integrated Data Retrieval System, is essentially an electronic interface between the IRS's employees and its various computer systems. See Crow v. Commissioner, T.C. Memo. 2002-149, slip op. at 11 n.6. Transcripts are obtained by entering various command codes (e.g., TXMODA, SUMRY, IMFOLI,

(continued...)

[*14] IRC Section 6201 for each tax and period listed on the CDP Notice. The notice and demand for payment was properly mailed to the taxpayer's last known address, within 60 days of the assessment, as required by IRC Section 6303.  There was a balance due when the CDP levy notice was issued or when the NFTL filing was requested. The collection period allowed by statute to collect to collect [sic] these taxes has been suspended by the appropriate computer codes for the tax periods at issue.  No pending bankruptcy during appeals or at the time the CDP notice was issued (11 U.S.C. § 362(a)(6)).  Verified UAL letter and Pub 4165 sent to TP/Poa.

Liability issue trying to be raised.  TP argues that the requirements of the law and admin procedures taken prior to issuing Intent to Levy notice have not been met; therefore, the notice is invalid and the amounts are incorrect.  TP goes on to explain that this issue is still presently on Appeal at the 11th Circuit Court of Appeals #12-10620 and no decison [sic] has been made.  I tried looking up this court number but didnt find his name listed.

I did however find #17775-08(1991-1995).  This was a large file and had a lot of reading.  TP disputed assessments as well as SNOD delivery and validity.  The courts deemed all assessments valid. Prints are in the case file.  As such, tp is precluded from raising this issue in the CDP.  We are not going to re-hash this out again.

I verified on Tax Court Decision that the assessment amounts and penalties were correct; howevr [sic], the only difference i see is that irs assessed fraud penalty which wsnt on the tax court decisin [sic], but TP was indicted of fraud and was sentenced.

---

[3](...continued)
ENMOD, BMFOLI, TXMODS, and CFINK) into IDRS to obtain a particular transcript.  See May v. Commissioner, T.C. Memo. 2014-194, at *12 n.6, aff'd sub nom. Best v. Commissioner, 702 F. App'x 615 (9th Cir. 2017).  ACS is the acronym for Automated Collection System.  Hampton Software Dev., LLC v. Commissioner, T.C. Memo. 2018-87, at *15.

[*15] TP was involved with fraud for 91-93 and indicted for under reporting and not reporting income. TP was an attorney at one time, also involved with multiple bzns entities. Bcz of fraud, there is no statute on ASED, and since involved with SFR, no statute on ASED per tax court docs.

IRPTRL 2009, 2010, 2011 shows tp only rcvs SSI of $15,958.00. No other income. TP isnt required to file 2007 thru 2012. TP is 71 yrs old, and court docs ordered that all responses to tp be in Arial 14pt print. TP must have trouble reading small print?[4]

Currently the account has open -L freeze, open TC520 cc72(tax court).

ACTION: while open court, cant proceed on collections. Need to get assistance on researching the tax court number tp is citing bcz i was unable to find on us tax court. Suspend case.

As shown in the notes quoted above, Settlement Officer Chavez thought that petitioner alleged that his 1991-95 tax liabilities were still being considered by the U.S. Court of Appeals for the Eleventh Circuit. The record does not clarify when petitioner made this allegation to Settlement Officer Chavez.

On December 16, 2013, Settlement Officer Chavez wrote an email seeking advice from Attorney Gordon Sanz of the Office of Chief Counsel. Chavez asked

---

[4]In a March 2009 court paper filed in petitioner's deficiency case at docket No. 17775-08, petitioner advised the Court that his eyesight was severely impaired. The Tax Court started serving copies of its orders on petitioner in Arial 14-point bold print. In this collection-review case, too, petitioner has advised the Court that he has reading difficulties. The Court has made allowances in this case similar to those it made in the deficiency case.

**[*16]** Sanz whether she should suspend the collection-review hearing "while TP has appealed in the 11th Circuit Court of Appeals and no decision has been made." Sanz responded: "It looks like you have some discretion. You could go ahead and proceed, if they did not file a bond, or, you could administratively suspend the case."

On December 19, 2013, Settlement Officer Chavez wrote a letter to petitioner scheduling a telephone conference on February 6, 2014, to discuss the reasons petitioner disagreed with the collection action (i.e., the proposed levy). The letter advised petitioner that the Office of Appeals would not "entertain any argument pertaining to the validity of the assessment or the underlying liability" because the Tax Court had decided "that the assessments are valid and correct." The letter stated that for the Office of Appeals "to consider alternative collection methods such as currently not collectible, installment agreement or offer in compromise, you must provide" a complete collection-information statement by January 17, 2014.

On January 16, 2014, petitioner wrote to Settlement Officer Chavez requesting "a copy" of the assessments that the Tax Court had determined to be valid and correct.

[*17] On January 28, 2014, petitioner wrote to Settlement Officer Chavez asking for the February 6, 2014 telephone conference to be postponed because a throat condition made it difficult for him to speak.

On February 6, 2014, Settlement Officer Chavez wrote to petitioner acknowledging that she had received his letters dated January 16 and 28. In her letter Chavez rescheduled the telephone conference from February 6 to March 6, 2014. However, Chavez's letter explained that if petitioner were unable to participate in the conference because of a physical inability to speak, she would hold the collection-review hearing entirely through correspondence. The letter asked petitioner to submit any further correspondence by March 6, 2014. The letter also stated:

> The Court Decision records state that the assessments were procedurally correct and the Statutory Notice of Deficiency letters were properly mailed to you; therefore, you are precluded from raising these issues in the CDP arena. We can however, consider a collection alternative for you. You will need to provide a complete Form 433-A, Collection Information Statement by March 6, 2014.

On March 1, 2014, petitioner wrote a letter to Settlement Officer Chavez. The letter stated in part:

> Further, the applicable statutes and section of the Internal Revenue Code provide that until the Tax Court decision becomes final, no assessment or collection activity can be undertaken by respondent. According to the U.S. Court of Appeals for the 11th Circuit, a

**[\*18]** decision by the Tax Court does not become final until all permissible appeals have either been decided or abandoned.

On or before April 3, 2014, the Office of Appeals reassigned petitioner's collection-review case from Settlement Officer Chavez to Settlement Officer Lora Davis.

On April 14, 2014, Settlement Officer Davis wrote in the case activity record: "Reviewed TXMOD transcripts to verify the IRS met all applicable requirements of law & administrative procedures in issuing the CPD notice." She also wrote: "Transcripts printed for case file."

On April 15, 2014, Attorney Ellen Friberg of respondent's Office of Chief Counsel faxed Settlement Officer Davis a copy of the U.S. Court of Appeal's November 27, 2012 opinion.

On April 28, 2014, Settlement Officer Davis wrote to petitioner to explain that she had been assigned his case. The letter stated that she would not consider the validity of the assessments or the amounts of liability for tax deficiencies for years 1991 through 1995 because the U.S. Court of Appeals had decided the deficiency case for these years against petitioner. The letter stated that if petitioner were interested in a collection alternative for the balances due he should

**[*19]** provide a collection-information statement (i.e., a Form 433-A).  Settlement Officer Davis also stated:

> For Currently Not Collectable (CNC)/Hardship Status--If you do not have the ability to make a payment at this time and would like consideration of hardship status, please advise.

In her letter Settlement Officer Davis asked that the items she had requested in that letter be sent to her by May 22, 2014, and stated that she could not consider collection alternatives "without this information".  The letter enclosed records of respondent dated April 28, 2014, with the heading "Account Transcript" for each respective tax year from 1991 to 1995.

On March 6, 2014, the date appointed for the telephone conference, Settlement Officer Davis telephoned petitioner but was unable to reach him.

On May 17, 2014, petitioner wrote a letter to Settlement Officer Davis.  The letter stated that petitioner wished to present issues to Settlement Officer Davis but could not until he received "copies of assessments" he had previously requested of Settlement Officer Chavez.  The letter then said:

> As for the forms you enclosed which set out various collection alternatives, until I receive the information I have requested and have had and a full and fair opportunity to present to you the legal issues I believe affect any levy action, I feel any such request is premature and might act as a waiver of the issues I wish to present[.]

**[\*20]** On June 4, 2014, Settlement Officer Davis made the following entry in the

case activity record:

> Received letter back from Tp without the requested financial
> information statement; TP is delaying the collection process and
> concerns that are addressed are not concrete issues; the liabilities
> have been through the courts and appealed at the 11th circuit which
> was sustained; TP does not have the ability to raise liability on the
> balances due and has not provided income information for a
> resolution. Review of the income information to see if Tp would be
> deemed hardship IRP reflects SS income only; however TRDBV
> (return transcript) for 2013 reflects dividends in the amount of
> 28510.00 SS incoem [sic] 17180.00; review of this reflects that TP
> may have an ability to make payment toward the balances due. To
> issue determination letter to TP.

On June 9, 2014, the Office of Appeals issued a determination sustaining

the proposed levy to collect petitioner's income-tax liabilities for the five tax years

1991, 1992, 1993, 1994, and 1995. The notice of determination stated:

> a.  Verification of legal and procedural requirements:
>
> The requirements of applicable law or administrative procedures have been met
> and the actions taken were appropriate under the circumstances.
>
> - We verified through transcript analysis that assessments were made on the
>   applicable CDP notice period per IRC § 6201 and the notice and demand
>   for payment letter was mailed to your last known address, within 60 days
>   of the assessment, as required by IRC § 6303.
>
> - There was a balance due when the CDP notice was issued per IRC §§
>   6330 and 6331(a). There is still a balance due.
>
> - IRC § 6330(a) imposes the requirement that a taxpayer be given an
>   opportunity for hearing before the Internal Revenue Service can levy on
>   the taxpayer's property.

[*21] ● We verified posting of TC 520 for the correct date on the period listed on the CDP hearing request, per review of computer transcripts which means the levy action has been suspended and the collection period allowed by statute to collect these taxes has been suspended by the appropriate computer codes for the tax periods at issue.

● There is no offer-in-compromise or installment agreement pending or currently in effect. There is also no pending innocent spouse request.

● There is no pending bankruptcy case, nor did you have a pending bankruptcy case at the time the CDP notice was sent * * *.

The determination stated: "Due to your prior opportunity to raise liability before US Tax Court and the 11th Circuit, you were denied the ability to raise liability before CDP Appeals the liability stands as determined by the courts." The determination stated that the Office of Appeals had requested on December 19, 2013, February 6, 2014, and April 28, 2014, that petitioner submit a Form 433-A (i.e., a collection-information statement) but that as of June 4, 2014, the Office had not received the form and that therefore petitioner was not eligible to be considered for a collection alternative. The notice also stated:

> We balanced the competing interests in finding the proposed levy appropriate. As discussed above, the assessments at issue are valid. Given your failure to provide us with the requested forms to explore collection alternatives, the proposed levy balances the need for efficient collection with your concern that any collection action be no more intrusive than necessary. The Notice of intent to Levy is sustained.

The determination also stated: "You did not cooperate in the determination to enforce collection; therefore, the case will be returned to the Compliance

[*22] Department for the appropriate actions. The Notice of Intent to Levy action is sustained."

3.    Procedural history of this case

    a.    Pleadings

In July 2014 petitioner filed his Tax Court petition for review of the June 9, 2014 determination of the Office of Appeals. The petition (and an amendment to the petition) contained this statement: "The Tax Court decision had not become final on or before March 5, 2012 and the assessments made on that date are invalid." In response, respondent's answer (and his answer to the amendment to the petition) stated: "Denies, except admits that the Tax Court's decision had not become final by March 5, 2012." The petition (and an amendment to petition) contained this statement: "The Notice of Determination also omitted any reference to Petitioner's position that the Tax Court lacked jurisdiction to entertain the deficiency notice case and that the decision in that case is, therefore, a nullity." In response, respondent's answer (and his answer to the amendment to the petition) stated:

> Denies. Alleges that the notice of determination refers to the opinion in which the Eleventh Circuit Court of Appeals affirmed the opinion of the Tax Court. Further alleges that in the opinion the Eleventh Circuit explicitly rejected the argument petitioner mentions in this paragraph.

**[*23]** b.    Respondent's prior summary-judgment motion

On October 8, 2015, respondent moved for summary judgment.  The only documents attached to the motion for summary judgment were (1) the June 9, 2014 notice of determination and (2) Forms 4340 for tax years 1991-95.  The Forms 4340 are dated August 5, 2014.  A Form 4340 is an IRS record entitled "Certificate of Assessments, Payments, and Other Specified Matters".  The type of information in a Form 4340 generally overlaps with the type of information in another IRS record entitled "Account Transcript" except that an "Account Transcript" contains some information about correspondence between the IRS and the taxpayer not found in a Form 4340.

On December 1, 2015, the Court denied respondent's October 8, 2015 motion for summary judgment.

c.    Respondent's current summary-judgment motion

On October 12, 2017, respondent again moved for summary judgment.

Attached to this motion for summary judgment were Forms 4340 for tax years 1991-95.  These Forms 4340 are dated August 2, 2017.

Accompanying the motion for summary judgment was a declaration by Settlement Officer Davis stating that she had maintained the "administrative file" for the collection-review hearing by the Office of Appeals and that the

[*24] administrative file included exhibits C through VV attached to the declaration. Exhibits I, K, L, V, and OO are potentially relevant to the issues raised by the parties.

Exhibit I was described in the declaration as "Various IDRS Transcripts printed from September 17, 2013 through June 4, 2014."[5] The documents in exhibit I are filled with codes and do not have any plain-language page headings. The dates of the documents in exhibit I are September 17, 2013; December 19, 2013; April 14, 2014; and June 4, 2014. (As noted before, records indicate that Settlement Officer Davis printed "transcripts" on April 14, 2014.) Some of the documents in exhibit I either are undated or have no apparent date.

Exhibit K was described in the declaration as "Page titled Mandatory Review required, dated October 21, 2013."

Exhibit L was described in the declaration as "Case Summary Cards dated October 18, 2013, October 29, 2013, March 31, 2014, and June 4, 2014."

Exhibit V was described in the declaration as a "19-page document" that "contains, among other items, correspondence between petitioner and respondent." Exhibit V includes several pages of IRS records that are filled with codes.

---

[5]See supra note 3 for the meaning of IDRS.

[*25] Exhibit OO is the April 28, 2014 letter from Settlement Officer Davis to petitioner. Attached to the letter are respondent's records with the heading "Account Transcript", dated April 28, 2014, for each tax year from 1991-95.

Respondent's motion for summary judgment asserted that the Office of Appeals had verified that the requirements of applicable law and administrative procedure had been met. To support this assertion, the motion cited exhibit I, the IDRS transcripts. The motion also cited the November 15, 2013 case activity record where Settlement Officer Chavez had written that she had verified that all legal and administrative requirements had been met through her research of "IDRS/ACS transcripts" and "Txmods". Thus we take the motion to suggest that the IDRS transcripts in exhibit I are what the Office of Appeals used to conduct its verification.

The motion further argued that the proposition that the verification was made was "supported" by the Forms 4340, dated August 2, 2017, although the motion expressly conceded that the Office of Appeals did not actually consult Forms 4340.

d.      Petitioner's October 16, 2017 motion for partial summary judgment

On October 16, 2017, petitioner moved for partial summary judgment. His motion rested on two theories: first, there should have been a two-stage procedure

**[\*26]** for handling the collection-review hearing; and second, his only current income was from Social Security. We describe each of these arguments below.

Two-stage procedure. Petitioner contended that the Office of Appeals erred by failing to respond to his letter of May 17, 2014, in which he had suggested that requesting a collection alternative would waive his opportunity to challenge the validity of the assessments. In effect, petitioner argued that the Office of Appeals erred by failing to divide the collection-review hearing into two stages. The first stage would address the validity of the assessments. The second stage would address collection alternatives.

Only Social Security income. Petitioner contended that the Office of Appeals had obtained information that indicated that his financial situation was such that it was impossible to collect any significant portion of the liabilities. This was apparently a reference to the following notation made by Settlement Officer Chavez on November 15, 2013: "IRPTRL 2009, 2010, 2011 shows tp only rcvs SSI of $15,958.00. No other income, TP isn't required to file 2007 thru 2012."

e. Petitioner's November 8, 2017 motion for partial summary judgment

On November 8, 2017, petitioner again moved for partial summary judgment. This motion was amended on November 13, 2017. The motion stated that the February 11, 2013 notation in respondent's narrative-history record for

[*27] petitioner's 1992 tax year showed that the "assessment" made on March 5, 2012, was incorrect. Although the motion literally asserted that the "assessment" made on March 5, 2012, was incorrect,[6] it was actually the assessments made in 1994 that became uncollectible because of the expiration of the 10-year periods for collecting assessments. These amounts were written off by respondent in 2004, but the writeoffs were reinstated in 2012. Therefore, we interpret petitioner's argument to be that the March 5, 2012 reinstatement of the 1994 assessments was incorrect because of the expiration of the collection periods.

    f.    <u>Petitioner's November 15, 2017 response to respondent's motion for summary judgment</u>

On November 15, 2017, petitioner filed a response to respondent's motion for summary judgment. We summarize his arguments below:

<u>Law of the case</u>. Petitioner argued that the same facts presented in respondent's second motion for summary judgment were presented in respondent's first motion for summary judgment. Therefore, petitioner argued, the second motion for summary judgment must be denied under the law-of-the-case doctrine.

---

[6]The motion stated: "The IRS itself determined that the assessments made on March 5, 2012 * * * were incorrect; therefore the Notice of Intent to Levy is invalid."

**[*28]** <u>Expiration of collection period</u>. Petitioner again argued that the March 5, 2012 reversals of the prior writeoffs were incorrect. He had made this argument previously in his November 8, 2017 motion for partial summary judgment.

<u>Section 7485</u>. Petitioner argued that section 7485 is a defense to the claim in his petition that the assessments were premature and therefore respondent waived the provisions of section 7485 by failing to refer to them in his answer.

<u>Ex parte communications</u>. Petitioner argued that the emails between Settlement Officer Chavez and Office of Chief Counsel Attorney Gordon Sanz were impermissible ex parte communications.

<u>Two-stage procedure</u>. Petitioner again argued that the Office of Appeals erred by failing to address his concern that proposing a collection alternative would waive his right to contest the underlying tax liability.

<u>Only Social Security income</u>. Petitioner argued that the Office of Appeals erred in concluding the balancing test of section 6330(c)(3)(C) was met because it had determined that petitioner's income consisted solely of Social Security benefits.

<u>Which transcripts</u>. Petitioner argued that the record does not show what transcripts the Office of Appeals relied on to verify that the requirements of any applicable law or administrative procedure have been met. Petitioner asserts that

[*29] the court papers contain multiple IRS records that could have been the records that the Office of Appeals consulted to perform the verification: (1) the IDRS transcripts attached as exhibit I to the declaration by Settlement Officer Davis, (2) exhibit K attached to the Davis declaration, (3) exhibit V attached to the Davis declaration, and (4) the documents headed "Account Transcript" in exhibit OO attached to the Davis declaration. Petitioner contends that the Court should disregard the Forms 4340 because they were printed after the determination of the Office of Appeals.

Invalidity of notice of deficiency. Petitioner argued that the Tax Court in the deficiency case did not have jurisdiction to redetermine his deficiencies because the notice of deficiency was invalid, having been mailed without there having been a partnership-level proceeding related to Rolla, in which he claimed he was a partner.

g.    Respondent's February 5, 2018 reply to petitioner's response to respondent's motion for summary judgment

On February 5, 2018, respondent filed a reply to petitioner's response to respondent's motion for summary judgment. Respondent's views are summarized below.

[*30] <u>Law-of-the-case doctrine</u>.  Respondent argued that the law-of-the-case doctrine does not require the Court to deny his motion for summary judgment because the first motion for summary judgment was not accompanied by a declaration of the Appeals officer and because the previous motion was not denied with prejudice.

Expiration of collection period.  Respondent admitted that he erred when on March 5, 2012, he reversed the writeoffs of the liabilities that he had entered in his records in 2004.  Respondent asserted that his counsel had contacted Settlement Officer Davis to request that the reinstated amounts be abated, that the abatements should show up in petitioner's accounts in two weeks, and that respondent would be willing to file a court paper accompanied by "account transcripts" once the abatements had been posted.  However, respondent stated that this "acknowledgment and correction of that error does not change respondent's determination that the assessments made per the Tax Court decision are valid, that summary judgment is appropriate, and that collection via levy should be sustained."

Section 7485.  Respondent argued that section 7485 did not stay the assessment of the amounts in the Tax Court's decision because petitioner did not

[*31] post an appeal bond. Respondent argued that he was not required to discuss section 7485 in his answer.

Ex parte communication. Respondent argued that it was permissible for Settlement Officer Chavez to seek advice from the Office of Chief Counsel.

Two-stage procedure. Respondent argued that it was not an abuse of discretion for the Office of Appeals to not respond to petitioner's concern that submitting financial information for consideration of a collection alternative would prevent him from challenging the underlying assessments.

Only Social Security income. Respondent argued that the Office of Appeals did not abuse its discretion in finding that the balancing test weighs in favor of sustaining collection because, even though the case activity report reflected that payor information showed petitioner received only Social Security income, Settlement Officer Davis's June 4, 2014 case activity record states that she reviewed transcripts showing additional income and thus that petitioner "may have an ability to make payment toward the balances due". Furthermore, respondent argued that the Office of Appeals did not abuse its discretion in resolving the balancing test in favor of levy because petitioner did not submit financial information.

[*32] <u>Which transcripts</u>.  Respondent explained that in support of his motion for summary judgment, dated October 12, 2017, he had attached a declaration from Settlement Officer Davis stating that she had maintained the administrative file for the collection-review hearing; that part of this administrative file was exhibit I, described as "Various IDRS Transcripts printed from September 17, 2013 through June 4, 2014"; that the June 9, 2014 notice of determination stated that she had verified the assessments "through transcript analysis"; and that in the April 14, 2014 case activity record she had stated that she had reviewed "TXMOD transcripts".  Respondent conceded that Settlement Officer Davis had failed to notice the erroneous reinstatement of the previously written-off balances of $4,823.18, $7,590.38, and $2,660.12, for tax years 1991, 1992, and 1993, respectively, and that counsel for respondent was in the process of having the erroneous reinstatements reversed.  Respondent reiterated the argument made in his motion for summary judgment that the existence of information in the Forms 4340 confirms that Settlement Officer Davis must have made the necessary verifications through transcript analysis.

Invalidity of notice of deficiency.  Respondent argued that petitioner's contention that the Tax Court did not have jurisdiction over his deficiency case had been rejected by the Court of Appeals for the Eleventh Circuit.

**[*33]** h.    <u>Respondent's February 21, 2018 supplement to his reply to petitioner's response to respondent's motion for summary judgment</u>

On February 21, 2018, respondent filed a supplement to his reply to petitioner's response to respondent's motion for summary judgment. To this supplement respondent attached, for tax years 1991, 1992, and 1993, his record with the heading "Account Transcript" showing that he had abated, on February 19, 2018, the amounts related to the self-reported tax liabilities for 1991, 1992, and 1993. These abated amounts were $10,284.65, $16,111.43, and $5,668.18, respectively. The abated amount for each year is greater than the reinstated amount for each year. This is because interest had accrued on the reinstated amounts. These documents with the heading "Account Transcript" are dated February 20, 2018.

    i.    <u>Petitioner's February 27, 2018 motion for summary judgment</u>

On February 27, 2018, petitioner filed a motion for summary judgment. In the motion petitioner stated that, because respondent had admitted that the reversals of writeoffs on March 5, 2012, were improper, the Office of Appeals had failed to "verify that all legal and administrative requirements have been met".

**[\*34]** j.  <u>Petitioner's March 15, 2018 sur-reply to respondent's February 5, 2018 reply to petitioner's response to respondent's motion for summary judgment</u>

On March 15, 2018, petitioner filed a sur-reply to respondent's February 5, 2018 reply to petitioner's response to respondent's motion for summary judgment. In this court paper, petitioner put forward his views regarding the statements in respondent's reply to the response.

<u>Law of the case</u>.  Petitioner argued that although respondent's pending motion for summary judgment was accompanied by a declaration of Settlement Officer Davis (and attached documents), and although respondent's first motion for summary judgment was not accompanied by such a declaration (and attached documents), respondent had the documents available to him when he filed his first motion for summary judgment.

<u>Expiration of collection period</u>.  With respect to the writeoffs that were reversed in 2012, petitioner argued that the process of assessment was "approximate and arbitrary" and that the Court should reject respondent's attempt to prove he abated the reinstated amount through "a newly fabricated transcript." This was apparently a reference to the documents with the heading "Account Transcript", dated February 20, 2018.

[*35] <u>Section 7485</u>.  Petitioner argued that respondent "cannot provide any court decisions actually discussing a procedure to be followed for the posting of such a bond."  Petitioner argued that respondent was required to plead his section 7485 argument in his answer under Rule 39, which requires a party to "set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations", because the issue of posting a bond is analogous to a statute of limitations.

<u>Ex parte communication</u>.  With respect to the issue of whether Settlement Officer Chavez's exchange of emails with Chief Counsel Attorney Sanz was prohibited ex parte communication, petitioner argued that Sanz's advice was given "in a hurried and off-hand manner" and therefore was not consistent with "the applicable IRS procedure."

<u>Identity theft</u>.  Petitioner attached to this court paper four pages of IRS records.  These four pages appear to be identical to pages 27, 28, 29, and 31 of exhibit I attached to the declaration of Settlement Officer Davis.  The four pages of records refer to a Form 1040A for tax year 2011 filed by a "taxpayer" named Martin Plotkin with an address in Lakeland, Florida.  (Petitioner's actual address is in Tavaras, Florida.)  The four pages of records contain a $28,510 entry for

[*36] "ORDINARY DIVIDEND AMOUNT", a $17,180 entry for "SOCIAL SECURITY BENEFIT AMOUNT", and a $9,999 entry for "T BAL DUE OR REFUND AMOUNT".  Petitioner contended that these four pages of records demonstrate that someone had filed a false return with respondent in petitioner's name reporting that he had Social Security benefits of $17,180 and dividends of $28,510 and was owed a refund of $9,999 and that respondent paid $9,999 to the person who filed the false return.  Petitioner argued that Settlement Officer Davis abused her discretion by failing to question him about this return.

k.     Petitioner's April 2, 2018 supplement to his February 27, 2018 motion for summary judgment

On April 2, 2018, petitioner filed a supplement to his February 27, 2018 motion for summary judgment.  In this supplement, he amended his motion for summary judgment to include his argument about identity theft, i.e., that the Office of Appeals abused its discretion by failing to question him about the identity-theft return.

l.     Respondent's April 30, 2018 reply to petitioner's February 27, 2018 motion for summary judgment, as supplemented

On April 30, 2018, respondent filed a reply to petitioner's February 27, 2018 motion for summary judgment, as supplemented.

[*37] <u>Expiration of collection period</u>. With respect to the erroneous reversals of the writeoffs, respondent again stated, as he had in his February 5, 2018 court paper, that his error did not "change respondent's determination that the assessments made per the Tax Court decision are valid, that summary judgment is appropriate, and the collection via levy should be sustained." Respondent contended that in <u>Everett Assocs., Inc. v. Commissioner</u>, T.C. Memo. 2012-143, the Court sustained collection activities with respect to some assessments but not others. Furthermore, respondent contended that it would be unnecessary and unproductive to remand the case to the Office of Appeals.

<u>Identity theft</u>. With respect to petitioner's identity-theft allegation, respondent contended that respondent eventually realized there was a possibility the refund claim was due to identity theft and did not issue the $9,999 refund. Furthermore, respondent contended that even if Settlement Officer Davis had questioned petitioner about the return submitted for 2011 and realized that it was an identity-theft attempt, such a realization would not have changed her determination that petitioner was not eligible for a collection alternative because he had failed to submit the requested financial-information statement. Respondent did not dispute that someone submitted an identity-theft return for tax year 2011 under petitioner's name. It appears that the information from the identity-theft

**[*38]** return was reflected in respondent's records and that the June 4, 2014 entry in the case activity record made by Settlement Officer Davis shows that she viewed these records and erroneously concluded that the information corresponded to a genuine return filed by petitioner for tax year 2013. Respondent did not dispute that this is so.

## Discussion

Before respondent can levy to collect a tax liability, he must notify the taxpayer of a right to a collection-review hearing with the IRS Office of Appeals. Sec. 6330(a)(1), (b)(1). The hearing, and the Office of Appeals' determination following the hearing, are governed by section 6330. Section 6330(c) provides:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> (1) Requirement of investigation.--The appeals officer shall at the hearing obtain verification from the Secretary [of the Treasury] that the requirements of any applicable law or administrative procedure have been met.
>
> (2) Issues at hearing.--
>
> (A) In general.--The person may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including--
>
> (i) appropriate spousal defenses;

**[*39]**            (ii)  challenges to the appropriateness of collection actions; and

(iii)  offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise.

(B)  Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

(3)  Basis for the determination.--The determination by an appeals officer under this subsection shall take into consideration--

(A)  the verification presented under paragraph (1);

(B)  the issues raised under paragraph (2); and

(C)  whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary.

Once the Office of Appeals has made the determination referred to by section 6330(c)(3), a taxpayer can petition the Tax Court for review of the determination. Sec. 6330(d)(1).

Where the existence or amount of the underlying tax liability is properly at issue, we review the determination de novo.  Goza v. Commissioner, 114 T.C.

**[\*40]** 176, 181-182 (2000). Where the existence or amount of the underlying tax liability is not properly at issue, we review the determination for abuse of discretion. Id. at 182.

Petitioner has made his arguments against sustaining the June 9, 2014 determination of the Office of Appeals in his court papers that address the parties' cross-motions for summary judgment. Respondent has made his arguments in favor of sustaining the determination in his court papers that address the parties' cross-motions for summary judgment. A motion for summary judgment will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b). As we explain below, there are no genuine disputes as to any facts that are material to the question of whether to sustain the determination. As a matter of law the determination is partly sustained and partly not sustained. See infra Discussion part 10.

1.  Uncollectibility of the self-reported 1991, 1992, and 1993 tax and related penalties and interest

In 1994 respondent assessed the tax reported on petitioner's 1991, 1992, and 1993 returns, along with related penalties and interest. In 2004 the 10-year periods for collecting these assessed amounts expired. See sec. 6502(a)(1). On

[*41] March 5, 2012, respondent erroneously recorded these amounts as collectible by reversing a prior writeoff. In July 2013 respondent issued a notice of intent to levy to collect these and other amounts. In June 2014 the IRS Office of Appeals sustained the proposed levy in its notice of determination. Petitioner contends that the notice of determination should not be sustained because the Office of Appeals did not recognize that respondent had reversed the writeoffs of the self-reported tax and related penalties and interest on March 5, 2012, even though the 10-year periods for collecting these amounts, see sec. 6502(a)(1), had expired.

Addressing this issue, respondent now concedes that it was error to reverse the writeoffs of the assessments of these liabilities. He also concedes that the Office of Appeals failed to ascertain that the periods for collection had closed on these self-reported tax liabilities (and related interest and penalties) for 1991, 1992, and 1993. Thus, respondent has effectively conceded that petitioner is no longer liable for these amounts. As explained infra Discussion part 10, we do not sustain the proposed levy to the extent of these amounts.

**[*42]** 2. <u>The Office of Appeals' failure to address petitioner's concern that proposing a collection alternative would waive his right to challenge the underlying tax liabilities</u>

Petitioner also contends that the Office of Appeals erred by failing to address his concern that by proposing a collection alternative he would waive his right to contest his underlying tax liabilities. In his letter of May 17, 2014, petitioner told the Office of Appeals that its request for a collection-information statement (a statement the Office of Appeals sought in order to evaluate petitioner's eligibility for collection alternatives) was "premature" until petitioner had an "opportunity" to present "legal issues." Essentially, petitioner's letter proposed that the Office of Appeals adopt a two-stage process under which, first, the office would consider and resolve any dispute about the existence or amount of the underlying tax liabilities; and second, the office would consider collection alternatives. Section 6330 does not require such a process. Even assuming for the purpose of argument that such a two-stage process was required under section 6330, the failure of the Office of Appeals to implement such a two-stage process would be at most a harmless error. See Perkins v. Commissioner, 129 T.C. 58, 71 (2007). This is because dividing the hearing into two stages would not have made a difference to the ultimate determination of the Office of Appeals in this case. On April 28, 2014, the Office of Appeals wrote petitioner that it would not consider

[*43] his challenges to the amounts or existence of his tax liabilities. Petitioner knew from this letter that the Office of Appeals would not consider his challenges to the amounts or existence of his tax liabilities. But petitioner refused to submit his collection-information statement. Nor did he request a collection alternative, such as an offer-in-compromise or an installment agreement. Nor did he submit any specific offer or propose any specific terms. Thus, even had the Office of Appeals adopted a two-stage process for considering the issues it was required to consider under section 6330(c), the outcome would have been the same. Without the collection-information statement, the Office of Appeals would not have considered any collection alternatives.[7] And this would not have been an error. See Ashmore v. Commissioner, T.C. Memo. 2017-233, at *18-*19 (finding no error for Office of Appeals to refuse to consider collection alternatives after taxpayer failed to submit collection-information statement); see also Huntress v. Commissioner, T.C. Memo. 2009-161, slip op. at 12-13 (holding Office of Appeals did not abuse its discretion in failing to agree to an offer-in-compromise when taxpayer did not make offer-in-compromise or submit Form 433-A). There was no prejudice in the way the Office of Appeals handled petitioner's concern.

---

[7]On December 19, 2013, Settlement Officer Chavez wrote a letter to petitioner stating that for the Office of Appeals to consider collection alternatives, he had to provide a collection-information statement.

**[\*44]** 3.     Which transcripts the Office of Appeals used for verification

Settlement Officer Davis's case-activity-record entry on April 14, 2014 stated that she had reviewed "TXMOD transcripts" to verify that all requirements of applicable law and administrative procedure had been met.  The notice of determination, dated June 9, 2014, stated that the requirements of applicable law and administrative procedure had been met.  In his October 12, 2017 motion for summary judgment, respondent observed that Settlement Officer Davis's declaration stated that among the items in the administrative file were exhibit I (described by Davis as various IDRS transcripts printed from September 17, 2013, through June 4, 2014).  Thus the motion implied that Settlement Officer Davis relied on the IDRS transcripts in exhibit I to conduct the verification.  Petitioner contended that it is unclear which records the Office of Appeals relied on to verify that the requirements of applicable law and procedure were met.  (Pet'r's Resp. Mot. Summ. J., paras. 34-40, Nov. 15, 2017).  He observed that there were other documents besides exhibit I attached to Settlement Officer Davis's declaration that she said were part of the administrative file.  Therefore, petitioner contended, some of these other documents could have been the documents that Settlement Officer Davis relied on in conducting the verification.  Petitioner in particular referred to the following documents:  exhibits I, K, V, and OO.  (It is possible

**[*45]** petitioner meant to refer to exhibit L rather than exhibit K.) Petitioner observed that Forms 4340 were attached to respondent's prior and current motions for summary judgment. However, petitioner contended that the Court should disregard the Forms 4340 because they were printed after the determination of the Office of Appeals.

We are satisfied that the Office of Appeals performed the necessary verification. The Forms 4340 reflect information that was in the IRS computer systems when the Office of Appeals conducted the verification. See Bowman v. Commissioner, T.C. Memo. 2007-114, slip op. at 15-17, aff'd, 285 F. App'x 309 (8th Cir. 2008). One requirement that must be verified--where, as in this case, respondent seeks to collect an amount of tax greater than that reported--is that a valid notice of deficiency was mailed. Sec. 6211(a) (defining a deficiency generally as the amount by which the actual tax liability exceeds the reported tax liability); sec. 6213(a) (prohibiting the assessment of a deficiency before the mailing of the notice of deficiency); sec. 6212(a) (authorizing respondent to send a notice of deficiency if he determines there is a deficiency in income tax); Jordan v. Commissioner, 134 T.C. 1, 12 (2010), supplemented by T.C. Memo. 2011-243. The Forms 4340 show that respondent mailed a notice of deficiency to petitioner, a fact that is corroborated by the opinion in the deficiency case. Plotkin v.

[*46] <u>Commissioner</u>, slip op. at 19. Petitioner challenges the validity of the notice of deficiency, but we reject that challenge as we explain <u>infra</u> <u>Discussion</u> part 4. Another problem petitioner avers is that the Office of Appeals failed to verify that the 10-year period for collecting the assessments of the self-reported liabilities had not expired. As explained <u>infra</u> <u>Discussion</u> part 10, we do not sustain the levy to the extent of the self-reported liabilities. Because of the information in the Forms 4340, and because petitioner has not identified any other particular requirement of applicable law or administrative procedure that has not been met, we hold that the Office of Appeals did not abuse its discretion in performing the verification mandated by section 6330(c)(1).

4.      <u>Invalidity of the notice of deficiency</u>

Petitioner contends that the notice of deficiency is invalid because no partnership-level proceeding was conducted before the notice was mailed. But petitioner made the same argument to the U.S. Court of Appeals, which rejected it. <u>Plotkin v. Commissioner</u>, 498 F. App'x at 960 n.4. He is barred by the doctrine of collateral estoppel from raising the issue again. <u>See</u> <u>Peck v. Commissioner</u>, 90 T.C. 162, 166-167, <u>aff'd</u>, 904 F.2d 525 (9th Cir. 1990). And even if he were not barred, his theory fails on the merits. The pleadings and other materials do not

**[*47]** show there is a genuine dispute of fact about whether Plotkin was a partner in Rolla.  See Rule 121(b).

5.      Section 7485

Section 6213(a) bars respondent from assessing a deficiency until he has mailed a notice of deficiency to the taxpayer and the 90-day period for filing a Tax Court petition has expired, or, if the taxpayer files a petition, until the decision of the Tax Court has become final.  The date that a Tax Court decision becomes final depends on whether the party who lost the Tax Court case exercises the right of appeal provided by section 7483.  Under section 7483, the party who loses a Tax Court case has 90 days to appeal the Tax Court decision to the U.S. Court of Appeals by filing a notice of appeal.  If the losing party does not appeal within 90 days, then the Tax Court's decision becomes final.  Sec. 7481(a)(1).  If the losing party timely appeals the Tax Court decision, then the decision becomes final only when the appellate litigation is concluded.  Sec. 7481(a)(2), (3), and (4).  To take an example that mirrors the procedural history of petitioner's appeal of his deficiency case, suppose:  (1) an appeal of a Tax Court decision is timely filed, (2) the U.S. Court of Appeals affirms the Tax Court decision, (3) the appellant files a certiorari petition with the U.S. Supreme Court, and (4) the certiorari

**[\*48]** petition is denied.  In that circumstance the Tax Court decision becomes final when the certiorari petition is denied.  Sec. 7481(a)(2)(B).

The rule in section 6213(a) is subject to an exception found in section 7485. See Kovacevich v. Commissioner, T.C. Memo. 2009-160, slip op. at 6-7 n.4. Section 7485(a) provides:

> SEC. 7485(a).  Upon Notice of Appeal.--Notwithstanding any provision of law imposing restrictions on the assessment and collection of deficiencies, the review under section 7483 [i.e., appellate review of the Tax Court's decision] shall not operate as a stay of assessment or collection of any portion of the amount of the deficiency determined by the Tax Court unless a notice of appeal in respect of such portion is duly filed by the taxpayer, and then only if the taxpayer--
>
> > (1)  on or before the time his notice of appeal is filed has filed with the Tax Court a bond in a sum fixed by the Tax Court not exceeding double the amount of the portion of the deficiency in respect of which the notice of appeal is filed, and with surety approved by the Tax Court, conditioned upon the payment of the deficiency as finally determined, together with any interest, additional amounts, or additions to the tax provided for by law, or
>
> > (2)  has filed a jeopardy bond under the income or estate tax laws.
>
> If as a result of a waiver of the restrictions on the assessment and collection of a deficiency any part of the amount determined by the Tax Court is paid after the filing of the appeal bond, such bond shall, at the request of the taxpayer, be proportionately reduced.

**[*49]** What section 7485 means is that appellate review stays assessment only if the taxpayer files an appeal bond. Rule 192; United States v. Evans, 340 F. App'x 990, 994 (5th Cir. 2009). Thus, when the taxpayer does not file an appeal bond, respondent may make the assessment even pending appellate review. Kahn v. United States, 590 F.2d 48, 49 (2d Cir. 1978); Burke v. Commissioner, 124 T.C. 189, 191 n.4 (2005); Barnes Theatre Ticket Serv., Inc. v. Commissioner, 50 T.C. 28, 29 (1968), aff'd sub nom. Barnes v. Commissioner, 408 F.2d 65 (7th Cir. 1969). The appeal bond must be filed on or before the date the notice of appeal is filed. Sec. 7485(a)(1). The bond must be in a sum fixed by the Tax Court. Id. A taxpayer who wishes the Tax Court to fix an amount of the bond can file a motion requesting it to do so. See Poinier v. Commissioner, 90 T.C. 63, 67 (1988) (denying taxpayer's motion to fix bond at amount requested; fixing bond at higher amount); Barnes Theater Ticket Serv., Inc. v. Commissioner, 50 T.C. at 28-29 (same). Alternatively a taxpayer can file motion asking the Tax Court to accept a particular bond. See, e.g., Armstrong v. Commissioner, 99 T.C. 506, 507, 510-511 (1992) (granting motion to accept taxpayer's bond where taxpayer submitted a bond, and filed a motion to accept the bond, when he filed notice of appeal).

In 2008 respondent issued the notice of deficiency to petitioner. The same year, petitioner filed the petition in the deficiency case. On January 27, 2012, the

[*50] Tax Court entered the decision in the deficiency case. On February 1, 2012, petitioner filed a notice of appeal. But he did not file a bond. Nor did he file a motion for the Tax Court to fix the amount of the bond or accept a particular bond. On March 5, 2012, respondent assessed the amounts redetermined in the Tax Court case. On April 15, 2013, the Supreme Court denied the certiorari petition. Thus, on that day, the Tax Court decision in the deficiency case became final. See sec. 7481(a)(2)(B). Respondent contends that he was permitted to make the March 5, 2012 assessment even though the Tax Court decision did not become final until April 15, 2013. For authority, respondent cites section 7485.

Petitioner contends, however, that assessment of the deficiencies was stayed under section 7485 because the Tax Court never fixed the amount of the bond. He posits that when the Tax Court does not fix the amount of a bond, no bond is required of a taxpayer under section 7485. Petitioner reads section 7485 as if it provided that the taxpayer need not file a bond if the Tax Court has not fixed the amount of the bond. But section 7485 contains no such provision. It requires the taxpayer to file a bond with the Tax Court in order for appellate review to operate as a stay on the assessment. Otherwise, appellate review does not operate as a stay on the assessment. Petitioner did not file a bond. Therefore the review of the Tax

[*51] Court's decision by the Court of Appeals did not operate to stay the assessment of the amounts decided by the Tax Court.

Finally, petitioner contends that respondent is barred from arguing that petitioner failed to file a bond under section 7485 because respondent did not make this argument in his answer. Rule 39 requires a party to set forth any matter constituting an affirmative defense in a pleading. Petitioner has supplied no authority for the proposition that his failure to file a bond is an affirmative defense in this context.

6. <u>Prohibited communications with the Office of Chief Counsel</u>

Petitioner contends that the Office of Appeals engaged in a prohibited communication with the Office of Chief Counsel. Settlement Officer Chavez, the first Appeals officer assigned to petitioner's collection-review case, sought advice from the Office of Chief Counsel on whether the collection-review case should be suspended while the U.S. Court of Appeals considered petitioner's appeal of his deficiency case. The Office of Chief Counsel told Settlement Officer Chavez that the matter was within her discretion.

These communications were not improper. In the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, sec. 1001(a)(4), 112 Stat. at 689, Congress directed respondent to develop a plan to restrict ex parte

[*52] communications between employees of the Office of Appeals and other employees. In accordance with the congressional direction, respondent issued Rev. Proc. 2000-43, 2000-2 C.B. 404, which was superseded by Rev. Proc. 2012-18, 2012-10 I.R.B. 455. Rev. Proc. 2012-18, sec. 2.06(1), 2012-10 I.R.B. at 462, expressly allows the Office of Appeals to obtain legal advice from the Office of Chief Counsel.

The communications between Settlement Officer Chavez and the Office of Chief Counsel are communications involving legal advice permitted by Rev. Proc. 2012-18, supra. These communications do not provide a predicate for us to hold that the Office of Appeals erred. Cf. Drake v. Commissioner, 125 T.C. 201, 210 (2005) (remanding to Office of Appeals and determining Office of Appeals abused discretion when it received communication from IRS Insolvency Unit prohibited by Rev. Proc. 2000-43, 2000-2 C.B. 404), supplemented by T.C. Memo. 2006-151, aff'd, 511 F.3d 65 (1st Cir. 2007).

7.   Only Social Security income

Petitioner argues that the Office of Appeals erred in concluding that the proposed levy balanced the need for the efficient collection of tax with his legitimate concern that any collection be no more intrusive than necessary. In support of his argument petitioner contends: "Respondent has acknowledged that

[*53] Appeals' review of IRS records showed Petitioner's only income for 2007-2012 was social security". This is a reference to the following entry made by Settlement Officer Chavez in the case activity record on November 15, 2013: "IRPTRL 2009, 2010, 2011 shows tp only rcvs SSI of $15,958.00. No other income. TP isnt required to file 2007 through 2012."

Had petitioner wished to convince the Office of Appeals that his income consisted only of Social Security benefits, he could have given the Office of Appeals a collection-information statement. This statement, properly filled out, would have contained information on petitioner's current income, including the sources and amount. In the absence of this form, the Office of Appeals did not err in determining that the balancing test of section 6330(c)(3)(C) was satisfied. See Hawthorne v. Commissioner, T.C. Memo. 2015-148, at *6. Although Settlement Officer Davis apparently assumed that the identity-theft return for 2011 was a genuine return and that the return reflected that petitioner earned dividend income, this error was harmless. The analysis of the balancing in the notice of determination hinged on petitioner's failure to submit the collection-information statement, not on his supposed dividend income.

[*54] 8.     Identity theft

Petitioner contends that the Office of Appeals erred by making its determination without contacting petitioner and otherwise investigating a false return filed in petitioner's name as part of an identity-theft scam involving a $9,999 refund claim.

We agree with respondent's argument that the identity-theft return for 2011 did not affect the Office of Appeals' determination to sustain the proposed collection action because petitioner did not submit financial information.  The Office of Appeals would have sustained the levy even had there been no identity-theft return.

9.     Law-of-the-case doctrine

Petitioner claims that because the Court denied respondent's prior motion for summary judgment filed on October 8, 2015, the Court is barred by the law-of-the-case doctrine from granting respondent's current motion for summary judgment filed October 12, 2017.  We disagree.  A motion for summary judgment is evaluated by reference to the papers accompanying the motion.  Rule 121(b) and (c).  The current motion for summary judgment was accompanied by papers substantially different from those accompanying the prior motion for summary judgment.  The law-of-the-case doctrine does not preclude us from granting the

**[*55]** current motion for summary judgment merely because we denied the prior one. See Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1283 (11th Cir. 2005); Williamsburg Wax Museum v. Historic Figures, Inc., 810 F.2d 243, 251 (D.C. Cir. 1987).

10.    Conclusion

As explained before, in 1994 respondent assessed self-reported tax (and related penalties and interest) for tax year 1991, 1992, and 1993; in 2004 the periods for collecting these amounts expired; in 2012 respondent erroneously reversed his writeoff of these self-reported liabilities; in July 2013 respondent issued a notice of intent to levy to collect these and other amounts; and in June 2014 the Office of Appeals sustained this collection action.

Petitioner contends that because respondent erroneously reinstated his self-reported tax liabilities (and related penalties and interest) for 1991, 1992, and 1993 (and because respondent sought to collect these reinstated amounts by levy), the Tax Court should not sustain respondent's collection activity regarding any of the unpaid liabilities that respondent seeks to collect by levy. However, when the Tax Court determines that a portion of the tax liability sought to be collected is not owed by the taxpayer, it is appropriate for the Court to sustain the collection activity as it applies to the liability that is owed. This proposition is supported by

[*56] Everett Assocs., Inc. v. Commissioner, T.C. Memo. 2012-143. In November 2001 Everett Associates, a corporation, filed for bankruptcy. Id. at 2-3. Respondent filed a proof of claim regarding (1) a secured claim, (2) an unsecured priority claim, and (3) an unsecured general claim. Id. at 3. In February 2003 the bankruptcy court confirmed a chapter 11 plan. Id. at 4. In March 2005 the bankruptcy case was closed. Id. at 4-5. In November 2006 respondent issued a notice of intent to levy to the corporation for various unpaid tax liabilities. Id. at 6. The unpaid tax liabilities included the claims for which respondent had submitted a proof of claim. Id. at 21-22. The unpaid tax liabilities also included (1) postconfirmation interest on respondent's unsecured priority claim, id. at 33, and (2) penalties that accrued during the pendency of the bankruptcy case, id. at 58-59. The Office of Appeals sustained the notice of intent to levy. Id. at 9. The Tax Court, reviewing the Office of Appeals' determination to sustain the proposed levy, held that respondent was entitled to payment of the liabilities reflected in the proof of claim. Id. at 22, 28, 31. However, the Court held that respondent was not entitled to payment of postconfirmation interest on his unsecured priority claim and postpetition penalties. Id. at 48, 61. At the conclusion of its opinion, the Tax Court did not sustain collection activity regarding postconfirmation interest on respondent's unsecured priority claim or the penalties that accrued during the

**[\*57]** pendency of the bankruptcy case.  Id. at 61.  However, it sustained the collection activity regarding the liabilities asserted in respondent's proof of claim. Id.

By analogy, the uncollectibility of a portion of the liabilities respondent sought to collect from petitioner does not mean that the collection activity is defective as to the entire liability.  We sustain respondent's collection activity with the exception of collection activity regarding the following liabilities that respondent concedes:  (1) the self-reported tax liabilities (and related interest and additions to tax) for 1991, 1992, and 1993 and (2) the liability for the deficiency for 1995 in the amount of $6,000 (the difference between $66,031 and $60,031).

Petitioner's October 16, 2017 motion for partial summary judgment will be denied, his February 27, 2018 motion for summary judgment will be granted in part and denied in part, and his November 8, 2017 motion for partial summary judgment will be denied as moot.  Respondent's October 12, 2017 motion for summary judgment will be granted in part and denied in part.

To reflect the foregoing,

An appropriate order and

decision will be entered.