# United States Tax Court

T.C. Memo. 2023-125

MARTIN G. PLOTKIN,
Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16224-14L.                         Filed October 19, 2023.

————

Martin G. Plotkin, pro se.

*Miriam C. Dillard* and *A. Gary Begun*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, *Judge*: This is a collection due process (CDP) case brought by petitioner, Martin G. Plotkin, pursuant to section 6330(d)[1] for review of a determination by the Internal Revenue Service (IRS) Office of Appeals (Appeals) sustaining a notice of intent to levy to collect unpaid federal income tax liabilities for the tax years 1991–95.

On April 4, 2019, we issued a Memorandum Opinion (the April 2019 Memorandum Opinion), *Plotkin v. Commissioner*, T.C. Memo. 2019-27, which resolved all issues in the case. The April 2019 Memorandum Opinion agreed in part with petitioner's Motion for Summary Judgment dated February 27, 2018, as supplemented on April 2, 2018, as to his reported tax liabilities (and related interest and additions to tax) for 1991, 1992, and 1993. *Id.* at *33. We opined that the determination of Appeals should not be sustained as to the collection

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, Title 26 U.S.C., in effect at all relevant times.

[*2] of these amounts. *Id.* at *57. In the same April 2019 Memorandum Opinion, we opined that the determination should not be sustained as to the collection of a $6,000 amount related to 1995. *Id.* at *8, *57. Neither party has specifically moved for summary judgment as to the collection of this $6,000 amount, but neither party denied that the determination of Appeals was erroneous as to this amount. Besides these two matters, we opined that the determination should be sustained, including the portion finding that the proposed levy balanced the need for efficient collection with the legitimate interest of petitioner that the collection action be no more intrusive than necessary. *Id.* at *57. We correspondingly explained that partial summary judgment should be granted to respondent. *Id.* However, on May 20, 2020, we issued an Order withdrawing these portions of the April 2019 Memorandum Opinion sustaining the determination to the extent that it concluded that the proposed levy balanced the need for efficient collection with the legitimate interest of petitioner that the collection action be no more intrusive than necessary. On February 3, 2021, we remanded the case to Appeals to further consider this balancing test. On July 29, 2021, and February 2, 2022, Appeals issued supplemental notices of determination determining that the proposed levy balanced the need for efficient collection with the legitimate interest of petitioner that the collection action be no more intrusive than necessary. In this Opinion, we hold that this balancing determination was not an abuse of discretion.

FINDINGS OF FACT

Petitioner was a resident of Florida when he filed his Petition. *Plotkin*, T.C. Memo. 2019-27, at *5.

In 2004 three years of income tax of petitioner, and related additions to tax and interest, were rendered uncollectible by the expiration of the ten-year period for respondent to collect assessed tax liabilities. § 6502(a)(1); *Plotkin*, T.C. Memo. 2019-27, at *6. The assessed amounts rendered uncollectible were $4,823.18 for 1991, $7,590.38 for 1992, and $2,660.12 for 1993. *Plotkin*, T.C. Memo. 2019-27, at *6.

On July 29, 2013, respondent issued a notice of intent to levy to petitioner. *Id.* at *10. The notice stated that respondent intended to levy to collect $1,876,431.28 of liabilities for the tax years 1991–95. *Id.* at *11. This amount included the amounts that had been rendered

**[\*3]** uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities. *Id.*

The notice of intent to levy gave petitioner the right to request a CDP hearing with Appeals. *Id.* at \*10. Petitioner requested and received such a hearing. *Id.* at \*11–12.

On June 9, 2014, Appeals issued a notice of determination sustaining the levy. *Id.* at \*20. The notice of determination did not acknowledge that the levy was intended in part to collect the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities. The notice of determination stated that because petitioner had failed to give Appeals the financial information it had requested during the hearing, the proposed levy balanced the need for efficient collection with petitioner's concern that any collection action be no more intrusive than necessary. *Id.* at \*21. This last statement (that petitioner had to give Appeals the financial information it requested for it to make the balancing determination in favor of petitioner) might be viewed as inconsistent with four case-activity entries that had earlier been made by the Appeals officer who handled the CDP hearing:

- First, a case-activity entry on November 15, 2013, stated that the officer had reviewed respondent's records of prior returns and that these returns showed that petitioner's only income was Social Security benefits. *Id.* at \*13, \*26.

- Second, a case-activity entry on April 14, 2014, suggested that the officer had reviewed records of prior returns, determined that petitioner's only income was Social Security benefits, and determined that petitioner qualified for alternatives to collection.[2]

- Third, a case-activity entry on the same day, April 14, 2014, suggested that the officer had reviewed records of prior returns, determined that petitioner's only income was Social Security benefits, and determined that petitioner could not pay the tax sought to be collected.[3]

---

[2] Although this entry was discussed in the April 2019 Memorandum Opinion, these aspects of the entry were not discussed.

[3] This entry was not discussed in the April 2019 Memorandum Opinion.

[*4] • Fourth, a case-activity entry on June 4, 2014, stated that the officer reviewed records of prior returns to see whether petitioner would be in a hardship situation, that one of the returns reported that petitioner had earned $28,510 of dividend income, that petitioner might be able to pay the tax sought to be collected, and that a notice of determination would be issued. *Id.* at *20.

Petitioner timely filed his Tax Court Petition for review of the June 9, 2014, notice of determination. *Id.* at *22.

On October 12, 2017, respondent moved for summary judgment. *Id.* at *23. In that Motion, respondent contended that Appeals did not abuse its discretion in sustaining the levy.

On October 16, 2017, petitioner moved for partial summary judgment. *Id.* at *25. One of his theories was that it was impossible for respondent to collect any significant portion of the liabilities because Appeals had determined on November 15, 2013, that he had no income other than Social Security income. *Id.* at *26. He explained in his Motion that his "financial situation was such that collection of any significant portion of the amount set out in the Notice of Intent to Levy was a practical impossibility." Because the Motion requested that the Court set aside the notice of determination, it is unclear why the Motion was titled a Motion for "Partial" Summary Judgment.

On November 8, 2017, petitioner moved for partial summary judgment. *Id.* In this Motion he argued that the notice of determination erred because the proposed levy involved an attempt to collect the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities. *Id.* at *26, *27 & n.6. The Motion requested that the Court "reverse" the notice of determination. It is therefore unclear why this Motion was titled a Motion for "Partial" Summary Judgment.

On November 15, 2017, petitioner filed a Response to respondent's October 12, 2017 Motion for Summary Judgment. *Id.* at *27. Reprising his Motion for Partial Summary Judgment of November 8, 2017, petitioner argued that the proposed levy was an attempt to collect the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities. *Id.* at *28. Reiterating the theory he had asserted in his Motion for Partial Summary Judgment of October 16, 2017, petitioner contended that

[*5] Appeals erred in concluding that the balancing test of section 6330(c)(3)(C) was met because Appeals had determined that petitioner's income consisted solely of Social Security benefits. *Plotkin*, T.C. Memo. 2019-27, at *28. He explained that the balancing test required Appeals to determine whether "a taxpayer is financially able to pay an amount due." Petitioner made other arguments, including that Appeals failed to perform the verification required by section 6330(c)(1). *Plotkin*, T.C. Memo. 2019-27, at *28–29, *46.

On February 5, 2018, respondent filed a Reply to petitioner's November 15, 2017, Response. *Id.* at *29. Among other things, respondent addressed petitioner's theory that Appeals erred in concluding the balancing test of section 6330(c)(3)(C) was met because Appeals had determined that petitioner's income consisted solely of Social Security benefits. *Plotkin*, T.C. Memo. 2019-27, at *31. Respondent gave two reasons why Appeals did not abuse its discretion in determining that the balancing test had been met: first, the Appeals officer's case-activity entry of June 4, 2014, stated that prior returns showed that petitioner might be able to pay; second, petitioner had failed to submit the requested financial information to Appeals. *Id.*

On February 27, 2018, petitioner filed a Motion for Summary Judgment. *Id.* at *33. In the Motion petitioner stated that, because respondent had admitted that reversals of writeoffs on March 5, 2012, were improper, thus reinstating the amounts that had been rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities, Appeals had failed to "verify that all legal and administrative requirements have been met." *Id.* It is unclear why petitioner divided his Motion for Summary Judgment into multiple separate Motions.

On April 4, 2019, the Court issued the April 2019 Memorandum Opinion resolving the parties' various Motions for Summary Judgment. *Plotkin v. Commissioner*, T.C. Memo. 2019-27.

The April 2019 Memorandum Opinion rejected petitioner's argument regarding the balancing test. *Id.* at *53. We recognized that the Appeals officer's case-activity entry of June 4, 2014, which stated that prior returns showed that petitioner might be able to pay, relied upon a false return filed by a third party. *Id.* However, we held that the analysis of the balancing test by Appeals hinged on petitioner's failure to submit the requested financial information, not on the information in the prior returns. *Id.*

**[\*6]** As to petitioner's argument that the proposed levy was an attempt to collect the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities, the April 2019 Memorandum Opinion held that the uncollectibility of these amounts did not mean that the proposed levy was defective as to the entire liability. *Id.* at \*55–57. We also observed that of a deficiency amount that had been determined for tax year 1995 respondent had failed to assess $6,000 on account of a typographical error. *Id.* at \*8. Neither party has specifically moved for summary judgment as to the collection of this $6,000 amount, but neither party denies that Appeals' notice of determination was erroneous as to collection of this amount.

The April 2019 Memorandum Opinion held that Appeals did not abuse its discretion in performing the verification mandated by section 6330(c)(1), except as to its failure to verify whether the ten-year period for collecting the assessed liabilities for 1991–93 was still open. *Plotkin*, T.C. Memo. 2019-17, at \*44–46.

The April 2019 Memorandum Opinion held that the notice of determination should be sustained except as to (1) the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities and (2) the $6,000 amount. *Id.* at \*8, \*57.

On July 1, 2019, the IRS Office of Appeals was renamed the IRS Independent Office of Appeals. *See* Taxpayer First Act, Pub. L. No. 116-25, § 1001, 133 Stat. 981, 983 (2019).

On May 20, 2020, we reconsidered our April 2019 Memorandum Opinion. We did so on Motion of petitioner, who argued that Appeals had obtained information that his financial situation was such that it was impossible to collect any significant portion of the liabilities, and that as a result, the notice of determination erred in concluding that the balancing test of section 6330(c)(3)(C) had been satisfied. In particular, petitioner argued that the determination by Appeals regarding the balancing test was inconsistent with the proposition that "[p]etitioner's only income came from his Social Security Benefits, which were insufficient to provide for any payment of the liability." We agreed with petitioner's argument inasmuch as we withdrew the portions of the April 2019 Memorandum Opinion holding that Appeals did not err in applying the balancing test of section 6330(c)(3)(C) because of petitioner's failure to submit the requested financial information. Our rationale for withdrawing those portions of the April 2019 Memorandum

[*7] Opinion was that in evaluating respondent's Motion for Summary Judgment, we should draw inferences in favor of petitioner, and that consequently we should not infer that the reasoning of Appeals hinged independently on petitioner's failure to provide the requested financial information. *See Naftel v. Commissioner*, 85 T.C. 527, 529 (1985) (stating that resolving a motion for summary judgment, the Court must draw inferences in favor of the nonmoving party). We left unchanged the other portions of the April 2019 Memorandum Opinion. We stated that the only unresolved issue in the case was whether Appeals determined that petitioner's income consisted solely of Social Security benefits and if so, whether this meant that Appeals abused its discretion in concluding that the proposed levy balanced the need for the efficient collection of tax with petitioner's legitimate concern that any collection action be no more intrusive than necessary.

On January 28, 2021, respondent moved to have the Court remand the case to Appeals "with respect to the one unresolved issue in the instant case—the reasoning behind Appeals' conclusion on the balancing test of I.R.C. § 6330(c)(3)(C)." The Motion stated that petitioner had told respondent that he was willing to consider remand if he had the opportunity to participate in the remand proceeding.

On February 3, 2021, the Court remanded the case to Appeals "for clarification and for further consideration . . . with respect to the balancing test." The Court ordered Appeals to hold a further hearing no later than April 30, 2021. The Court did not initially set a deadline for Appeals to issue a supplemental notice of determination.

On July 7, 2021, the Court ordered Appeals to issue a supplemental notice of determination on or before July 29, 2021.

On July 29, 2021, Appeals issued a supplemental notice of determination.

By Motion filed by the Court on August 16, 2021, petitioner stated that he had been prevented from participating in the remand hearing by mailing and other delays. Consequently, we imposed a new deadline for Appeals to issue a new supplemental notice of determination regarding the remand. The new deadline was February 2, 2022.

On February 2, 2022, Appeals issued a second supplemental notice of determination. In that notice, Appeals sustained the proposed levy and stated that petitioner is not entitled to currently-not-collectible

[*8] (CNC) status because petitioner failed to submit requested financial information:

> You were afforded a second supplemental hearing by the Order of Tax Court. The purpose of the second supplemental hearing remains the same, for further consideration in order to enable the Court to understand respondent's determinations in the notice of determination with respect to the balancing test. I have reviewed the additional correspondence received from you. I have provided you Internal Revenue Manual (IRM) references, which requires you to provide a completed Form 433-A, Collection Information Statement, for review of your ability/inability to pay. You do not meet the currently not collectable exception criteria as indicated in IRM 5.19.17.2.4.1, due to your total balances due the IRS. During the original hearing, you were provided multiple opportunities to provide a completed Form 433-A and declined the opportunity to assist you in a determination as to the proposed levy by the IRS. Therefore the proposed levy action is sustained.

Another portion of the notice of determination explained the significance of the amount of the balance due:

> During the Supplemental Hearing, I provided you multiple Internal Revenue Manual (IRM) references, reflecting a completed Form 433-A, Collection Information Statement (CIS) is required to proceed with a resolution as to the proposed levy action by the IRS. There is an exception as indicated in IRM 5.19.17.2.4.1, if the reported income is social security only, however, the IRM reference is only in regard to balances due of $10,000.00 or less the IRS. Therefore you do not qualify. Your balance due the IRS requires you to disclose your assets, income and expense to determine the appropriate resolution to the balances due. During the original hearing you were provided multiple times, the opportunity, to provide a completed 433-A, CIS and you declined Ms. Chavez's and my request to assist you.
>
> Based on this, I have determined due to your refusal to provide a completed Form 433-A, CIS, I am unable to

[*9]   assist you with a resolution as to the levy action proposed by the IRS.

> The proposed levy action is sustained.

Another portion of the second supplemental notice of determination explained the importance of the requested financial information:

> Per IRM 5.16.1.2.9 – Hardship, in summary states a hardship exists if you are unable to pay reasonable basic living expenses. The basis for a hardship determination is from information about your financial condition provided on Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals. Generally, these cases involve no income or assets, no equity in assets or insufficient income to make any payment without causing hardship. An account should not be reported as CNC if the taxpayer has income or equity in assets and enforced collection of the income or assets would not cause hardship. It states verification of a CIS is not required if the aggregate unpaid balance of assessments is less than $10,000.00 and the information on the CIS appears reasonable. There are certain conditions, a CIS is not required before reporting an account CNC. The aggregate unpaid balance of assessments, including any prior CNCs, must be less than $10,000.00 and states that certain conditions must exist. It further states verification that is required for balances due between $10,000.00 and $100,000.00 and balances above $100,000.00. IRM 5.15.1 – Financial Analysis Handbook as notated in the IRM 5.16.1.2.9 is utilized when you provide a completed CIS.

The second supplemental notice of determination concluded that petitioner refused "to provide the information required" and that therefore it was Appeals' judgment that "the Notice of Intent to Levy balances the efficient collection of taxes with your legitimate concern that the collection action be no more intrusive than necessary."

On December 16, 2022, this case was tried by videoconference. At trial we admitted Exhibit 1000-R, which consisted of (1) the second supplemental declaration of Appeals Officer Lora Davis and (2) sub-exhibits A through QQ.

**[*10]**                    OPINION

Before respondent can levy to collect a tax liability, respondent must first notify the taxpayer of the right to a CDP hearing with Appeals. § 6330(a)(1), (b)(1). The hearing, and Appeals' determination following the hearing, are governed by section 6330. Section 6330(c)(1) provides that at the hearing the Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(2) provides that the taxpayer may raise at the hearing (1) any relevant issue related to the unpaid tax or the proposed levy, including challenges to the appropriateness of collection actions and including offers of collection alternatives, and (2) challenges to the existence or amount of the underlying tax liability if the person did not have a prior opportunity to dispute such tax liability. Section 6330(c)(3) provides that the determination by Appeals must take into consideration the verification presented under section 6330(c)(1), the issues raised under section 6330(c)(2), and, finally (as provided by section 6330(c)(3)(C)), whether the proposed collection action (in this case a levy) balances the need for the efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary. Unless the existence or amount of the underlying tax liability is properly at issue, we review the determination for abuse of discretion. *Goza v. Commissioner*, 114 T.C. 176, 181–82 (2000).

The only remaining issue to resolve is whether Appeals determined that petitioner's income consisted solely of Social Security benefits and if so, whether Appeals abused its discretion in concluding that the proposed levy balanced the need for the efficient collection of tax with petitioner's legitimate concern that any collection action be no more intrusive than necessary.

I.    *Appeals did not err in not placing petitioner's account in CNC status.*

On remand, Appeals determined that petitioner did not meet the criteria for CNC status. "CNC status, which suspends IRS collection efforts, 'is a "collection alternative" that the taxpayer may propose and that the Office of Appeals must take into consideration.'" *Riggs v. Commissioner*, T.C. Memo. 2015-98, at *11 (quoting *Wright v. Commissioner*, T.C. Memo. 2012-24, slip op. at 7); *see also Norberg v. Commissioner*, T.C. Memo. 2022-30, at *5. It is available if a taxpayer

**[\*11]** has "no apparent ability to make payments on the outstanding tax liability." *Norberg*, T.C. Memo. 2022-30, at \*5.

Because petitioner refused to submit financial information, Appeals determined that petitioner's account did not qualify for CNC status. As Appeals recognized, the amount respondent is attempting to collect from petitioner is more than $10,000. Appeals followed guidance in the *Internal Revenue Manual* that the account of a taxpayer with a balance due of more than $10,000 cannot be placed in CNC status unless the taxpayer's income, expenses, and equity in assets, are verified by financial information from the taxpayer. Reproduced below are relevant portions of the *Internal Revenue Manual* 5.16.1.2.9(1)–(5) (May 22, 2012), which are found in the administrative record at Ex. 1001-R, Ex. S, at 161–62:

(1) Follow the procedures in IRM 5.15.1, *Financial Analysis Handbook*, to determine the correct resolution of the case based on the taxpayer's assets and equity, income and expenses:

- A hardship exists if a taxpayer is unable to pay reasonable basic living expenses.

- The basis for a hardship determination is from information about the taxpayer's financial condition provided on Form 433-A, *Collection Information Statement for Wage Earners and Self-Employed Individuals* or Form 433-B, *Collection Information Statement for Businesses*.

- Generally, these cases involve no income or assets, no equity in assets or insufficient income to make any payment without causing hardship.

- An account should not be reported as CNC if the taxpayer has income or equity in assets, and enforced collection of the income or assets would not cause hardship.

- Hardship accounts are closed using cc 24 through 32. See Exhibit 5.16.1-2.

**Reminder:** Hardship closing codes can **only** be used for individual or joint IMF assessments, sole

**[*12]**   proprietorships, general partnerships, and LLCs, where an individual owner is identified as the liable taxpayer. See IRM 5.16.1.2.4 for decedent cases.

(2)   Verification of a CIS is not required if the aggregate unpaid balance of assessments is less than $10,000 and the information on the CIS appears reasonable.

(3)   Under certain conditions, a CIS is not required before reporting an account CNC. The aggregate unpaid balance of assessments, including any prior CNCs, must be less than $10,000.00 and at least one of the following conditions must exist:

- The taxpayer has a terminal illness or excessive medical bills.

- The taxpayer is incarcerated.

- The taxpayer's only source of income is social security, welfare, or unemployment.

- The taxpayer is unemployed with no source of income. Consider a mandatory follow-up or Manually Monitored Installment Agreement (MMIA) for seasonal workers.

**Note:** Employees are required to secure documentation from the taxpayer prior to declaring the account uncollectible if internal documents such as IRPTR and RTVUE do not confirm the taxpayer's circumstance.

(4)   The following verification is required for accounts when the aggregate unpaid balance of assessments is between $10,000.00 and $100,000.00:

- IRPTR or SUPOL

- RTVUE/TRDBV

- Conduct Currency and Banking Retrieval System (CBRS) research when IRPTR reflects that a taxpayer has filed a Foreign Bank Account

**[*13]** Reporting (FBAR) form to obtain the name of the bank where the account is located, the amount in the account, co-owners, and other useful information. See IRM 5.1.18.15, *Foreign Bank Account Report.*

**Note:** RTVUE/TRDBV is required only if the last filed return was for one of the immediate two preceding years. If RTVUE reveals new income or asset information secure a copy of the return(s) for the purpose of identifying income or assets.

(5) For accounts where the aggregate unpaid balance of assessments is above $100,000.00 the following additional verification is required:

- **Full credit report** on IMF and sole proprietor taxpayers and LLCs (where an individual owner is identified as the liable taxpayer)

- Motor vehicle records

- Real and personal property courthouse records, see IRM 5.1.18.4, *Real Property Records*

- On-line locator services, such as Accurint, follow security guidelines when using public internet search engines.

- CC AMDIS. If there is an open Examination activity, contact the revenue agent to determine any additional sources of collection or the need to limit the scope of the examination based on collectability.

- Audit File or Special Agents Report if the assessment originated in Examination or Criminal Investigation (CI). The file can be secured by requesting the DLN of the TC 29X/30X.

**Note:** If unable to obtain any information from the special agent, consider consulting with Advisory. If

**[\*14]**    there is a TC 910 on the module, the taxpayer may have filed a financial statement with the probation office.

> **Note:**    Credit reports are optional for accounts with an aggregate balance below $100,000.00.

We hold that Appeals did not abuse its discretion in refusing to place petitioner's account in CNC status. *See Chadwick v. Commissioner*, 154 T.C. 84, 95 (2020) (stating that Appeals does not abuse discretion in denying CNC status to taxpayer who does not submit the necessary financial information).

In our Order of May 20, 2020, we inferred from the then-existing administrative record that Appeals could rely entirely on past-filed returns, without requiring financial information from petitioner, in determining whether petitioner could pay his tax.[4]  Our Order of May 20, 2020, drew all inferences about the administrative record in favor of petitioner, the party opposing respondent's Motion for Summary Judgment. *See Naftel*, 85 T.C. at 529.  But we are not now evaluating the merits of a Summary Judgment Motion filed by respondent.  We are weighing the evidence adduced at trial.  Furthermore, the administrative record is now different from the one we considered in our Order of May 20, 2020.  The administrative record related to the remand proceedings shows that Appeals denied CNC status for petitioner's account because he refused to provide financial information.  Our conclusion that Appeals on remand did not abuse its discretion in denying CNC status for petitioner's account is not inconsistent with our Order of May 20, 2020.  In that Order we determined that an issue remained for trial.  We have now had that trial.  We resolve the issue in favor of respondent.

II.    *Appeals did not err in evaluating petitioner's sole unresolved challenge to the levy by determining whether his account was eligible for CNC status.*

Petitioner contends that Appeals erred on remand in considering whether his account was eligible for CNC status.  Petitioner explains that he did not request such status during the remand hearing and

---

[4] We had observed that the two case-activity entries of April 14, 2014, "suggested" that the Appeals officer had "reviewed information from petitioner's income tax returns and, on the basis of that information, concluded that petitioner could not pay the amounts the levy was intended to collect."

[*15] therefore he should not have been subjected to the requirement that he submit financial information.

Although petitioner did not request CNC status on remand, Appeals agreed to waive the requirement that petitioner request CNC status. As the second supplemental notice of determination states: "It has been agreed that you are not required to request a collection alternative or CNC during the CDP Appeals process." The question therefore becomes whether Appeals erred in waiving this requirement and in considering whether petitioner's account qualified for CNC status despite this requirement.

CNC status is appropriate when the taxpayer cannot pay. *Norberg*, T.C. Memo. 2022-30, at *5. Petitioner's argument related to Social Security benefits was in essence that he cannot pay the amounts respondent intends to collect. As petitioner argued in his Motion for Partial Summary Judgment on October 16, 2017, his "financial situation was such that collection of any significant portion of the amount set out in the Notice of Intent to Levy was a practical impossibility." In his November 15, 2017 Response to respondent's October 12, 2017, Motion for Summary Judgment, petitioner contended that Appeals had failed to determine whether he was "financially able to pay." Thus, by considering petitioner's qualification for CNC status, Appeals was considering the argument that petitioner made against the proposed levy (his alleged inability to pay), which was the same argument the Court considered in reconsidering its grant of respondent's Motion for Summary Judgment. *Plotkin*, T.C. Memo. 2019-27, at *52–53. It was appropriate for Appeals on remand to evaluate petitioner's argument against the intended levy by determining whether petitioner's account qualified for CNC status.

III. *Appeals did not err in considering petitioner's refusal to provide financial information in applying the balancing test.*

The corollary to petitioner's argument that financial information should be required only for taxpayers who request CNC status is that no such information should be required for Appeals to apply the balancing test under section 6330(c)(3)(C). This argument is unavailing. Looking at the second supplemental notice of determination through the lens of section 6330(c)(3)(C), we discern no abuse of discretion by Appeals. The second supplemental notice of determination concluded that petitioner refused "to provide the information required" and that therefore it was Appeals' judgment that "the Notice of Intent to Levy

[*16] balances the efficient collection of taxes with your legitimate concern that the collection action be no more intrusive than necessary." The *Internal Revenue Manual*'s guidance for determining whether a levy meets the section 6330(c)(3)(C) balancing test requires Appeals to consider a taxpayer's "financial circumstances." *Gonzalez v. Commissioner*, T.C. Memo. 2010-8, slip op. at 8 ("As required under section 6330(c)(3)(C), an Appeals officer should consider, among other things, a taxpayer's actions, compliance history, and financial circumstances when balancing the Government's needs with those of the taxpayer. Internal Revenue Manual pt. 8.7.2.3.13(6) (Jan. 1, 2006).") In the remand proceeding, Appeals asked petitioner for financial information in order to understand his financial circumstances. Petitioner refused to provide any. Consequently, Appeals did not err in concluding the levy met the balancing test under section 6330(c)(3)(C). *See Cosio v. Commissioner*, T.C. Memo. 2022-18, at *8 (stating that where taxpayer did not respond to requests for financial information or a completed offer-in-compromise form, Appeals did not abuse its discretion in determining that the levy balanced the needs of collection with the concerns of the taxpayer); *Bunton v. Commissioner*, T.C. Memo. 2021-141, at *22 (stating that Appeals did not abuse its discretion in concluding that the levy balanced the needs of collection with the concerns of the taxpayers given that taxpayers never submitted financial information or outstanding tax returns), *aff'd*, No. 22-70139, 2023 WL 4449183 (9th Cir. July 11, 2023); *Ramdas v. Commissioner*, T.C. Memo. 2013-104, at *41 (stating that a taxpayer who alleges that a levy would be a hardship must follow up with further information to prove the harmfulness of the levy before Appeals, otherwise the taxpayer does not prove hardship that would render the levy "more intrusive than necessary"); *Vuckovich v. Commissioner*, T.C. Memo. 2009-7, slip op. at 8–9 (same); *see also Assured Source, Inc. v. Commissioner*, T.C. Memo. 2010-243, slip op. at 7–9 (stating that Appeals did not abuse its discretion by failing to engage in the balancing analysis under section 6330(c)(3)(C) where taxpayer submitted no financial information and did not submit outstanding tax returns).

IV.  *Appeals did not err regarding matters outside the scope of the remand.*

On brief, petitioner also makes two arguments regarding the amounts rendered uncollectible in 2004 by the expiration of the ten-year period for collecting assessed tax liabilities. First, petitioner contends that Appeals erred in its original notice of determination in verifying that all requirements of any applicable law or administrative procedure

[*17] have been met.  Second, petitioner contends that respondent has abated interest in the wrong amount.  The CDP hearing conducted on remand was not a new hearing, but rather a hearing to provide "the parties with the opportunity to complete the initial section 6330 hearing while preserving the taxpayer's right to receive judicial review of the *ultimate* administrative determination."  *Kelby v. Commissioner*, 130 T.C. 79, 86 (2008) (quoting *Drake v. Commissioner*, T.C. Memo. 2006-151, *aff'd*, 511 F.3d 65 (1st Cir. 2007)).  We remanded the case to Appeals to consider only one issue, the balancing test.  These other issues are outside the scope of the remand.

V.    *Conclusion*

In its second supplemental notice of determination, dated February 2, 2022, Appeals did not abuse its discretion in determining that the proposed levy balances the efficient collection of taxes with petitioner's concern that the collection action be no more intrusive than necessary.  All other issues in this case were resolved by our April 2019 Memorandum Opinion, as modified by our May 20, 2020, Order.  Consequently, the June 9, 2014, notice of determination by Appeals, as supplemented by the July 29, 2021, supplemental notice of determination, and as supplemented by the February 2, 2022, second supplemental notice of determination, should be sustained except as to the collection of the following liabilities by the proposed levy: (1) the tax liabilities (and related interest and additions to tax) for 1991, 1992, and 1993 and (2) the liability for the deficiency for 1995 of $6,000 (the difference between $66,031 and $60,031).

To reflect the foregoing,

*An appropriate order and decision will be entered.*